*Hartford,*
*June,* 1814.

## WHITING and others *against* FARRAND and others.

Where goods are contracted for, which are not delivered, but are to be sent to the purchaser, if the vendor send them in the mode of conveyance agreed on by the parties, or directed by the purchaser; or, if no agreement be made, or direction given, in the usual mode; or if the purchaser being informed of the mode assents to it; or if there have been sales and conveyances of other goods, and the vendor continues to send them in the same mode; then the goods are at the risk of the purchaser during the passage.
If one partner withdraw himself from the copartnership, thereby causing its dissolution, he continues liable for the non-performance of an executory contract previously entered into by the copartnership, in the same form of action, as well as to the same extent, as though no dissolution had taken place.

THIS was an action of *assumpsit* for books sold and delivered by the plaintiffs to the defendants, in pursuance of a written contract previously entered into between the parties. The cause was tried at *New-Haven, January* term, 1814, before *Reeve, Trumbull,* and *Ingersoll,* Js. The contract produced on the trial was in substance as follows. By the 1st article, the plaintiffs engaged to purchase of the defendants 300 copies of *Milner's Church History* in four volumes 8vo. ; 100 copies of *Taylor* and *Hampton on the Atonement* in one volume 12mo. ; and 400 copies of *Trumbull's History of the United States* in one volume 8vo. ; at certain prices. By the 2d article, the defendants, under the firm of *Farrand, Mallory* & Co., engaged to purchase of the plaintiffs 300 copies of *Newton's Works* in six volumes 8vo. ; of *Hamilton's Works* 300 copies of the edition in three volumes royal 12mo., and 150 copies of that in three volumes medium 8vo. ; and 200 copies of *Shuckford's Connexions,* in three volumes 8vo. ; at certain prices. The 3d, 4th and 5th articles contained some stipulations of minor importance, which it is unnecessary to state. The 6th article was as follows : " The credit on purchases shall be nine months from the shipment of the articles, and payable in negotiable notes at six and twelve months, unless otherwise agreed." This contract was entered into in *April* 1810. The plaintiffs were booksellers in *New-York,* and *Farrand, Mallory* & Co. in *Boston.* On the 10th of *July* 1810, *Farrand* sold out his interest in the latter concern, whereby that firm was dissolved ; of which the plaintiffs had immediate notice. The business was continued under the firm of *D. Mallory* & Co., and all the accounts of the former firm were transferred to the books of the latter. A part of the books specified in the 1st article of the contract, *viz.* the first and second volumes of *Newton's Works,* had been shipped by the plaintiffs to the defendants at *Boston,* before the dissolution ; and the plaintiffs afterwards continued to ship the other books in fulfilment of the contract to the care of *D. Mallory* & Co. trans-

mitting, at each shipment, an invoice thereof in the name of *Farrand, Mallory* & Co. On the 30th of *November* 1810, the plaintiffs shipped by the sloop *China,* a regular coasting vessel, the books for which this action was brought, consisting of *Hamilton's Works* and the 5th volume of *Newton's Works*; and on the same day, the plaintiffs forwarded by mail a letter addressed to *Farrand, Mallory* & Co., *Boston,* giving advice of the shipment, and enclosing an invoice and bill of lading. The *China* sailed soon afterwards for *Boston*; but after being a long time at sea she was wrecked, and the books were lost. The usual mode of transporting property from *New-York* to *Boston* is by water as well as by land. In transporting the books under this contract from one to the other, the parties had uniformly sent them by water; and no objection had been made to that mode of conveyance. When any of the books mentioned in the contract were received from the plaintiffs by *Farrand, Mallory* & Co. before the dissolution, they were passed to the credit of the plaintiffs on the books of that firm. After the dissolution, as such books were from time to time received, they were passed to the credit of the plaintiffs on the books of *D. Mallory* & Co.; and among others, the invoice of books by the *China* was so entered under date of *September* 20th, 1811. Upon these facts, the plaintiffs claimed, that the books in question became the property of the defendants upon the shipment, and were thereafter wholly at their risk; and that the plaintiffs, therefore, were entitled to recover the amount of the invoice, with interest after the expiration of nine months from the time of shipment. This claim was resisted on the part of the defendants generally; and on the part of *Farrand,* a distinct claim was set up. He contended, that although he might be liable in another form of action for not fulfilling the contract, yet he was not liable for the books delivered under the contract after he had left the firm of *Farrand, Mallory* & Co., and notice of the dissolution had been duly given to the the plaintiffs. The court in their charge instructed the jury, that the defendants were liable in the manner claimed by the plaintiffs; and the jury found a verdict for the plaintiffs accordingly. The defendants thereupon moved for a new trial; and the motion was reserved for the advice of all the Judges.

*Hartford,*
June, 1814.

Whiting
*v.*
Farrand.

*Staples,* in support of the motion, contended, 1. That the defendants were not liable for the books shipped by the *China.* They were not the property of the defendants until delivery, either actual or virtual. An actual delivery to the defendants is not claimed. The bare act of shipment was not a virtual delivery; and the attending circumstances requisite to make it such were here wanting. The shipment was made without orders. No notice was given to the defendants that the books were ready for delivery. The defendants had no opportunity to examine them, as they ought to have had, to see if the printing and paper, and the execution generally, were such as the contract contemplated, and as they were bound to accept. For aught that appears in the case, the defendants might have had justifiable grounds for refusing to accept the books, if they had been actually tendered to them. Further, the defendants ought to have had notice that the books were ready, that they might appoint an agent to receive them, or give instructions as to the mode of conveyance.

Again, there was no sufficient notice of the shipment. The plaintiffs in their letter of advice did not name the vessel or master; nor did they specify the time of shipment, or the terms.

2. That at any rate, *Farrand* was not liable. He had withdrawn from the copartnership, and this was known to the plaintiffs, before the shipment. He had a right to withdraw; and after notice given, he could no longer be charged as a partner. He might be liable for the non-fulfilment of a contract entered into by the firm while he was a partner; but he could not be charged with goods delivered to a mercantile house with which he had ceased to have any concern. The liability of *Farrand* on this latter ground may be tested by enquiring whether if *D. Mallory* & Co. had given their notes for the books in question, pursuant to the 6th article of the agreement, he could be sued on such notes.*

---

* It was also contended, on the part of the defendants, that the contract had been put an end to, previous to the shipment. This point depended on the construction of a correspondence which had passed between the parties. But as the court in their decision have taken no notice of this point, the reporter has, in conformity to his general plan, excluded such correspondence from the statement of the case, and omitted the arguments of counsel upon its effect.

*Hartford*,
June, 1814.

Whiting
*v.*
Farrand.

*Daggett* and *N. Smith*, contra, contended, 1. That the books in question, by virtue of the contract between the parties, became the property of the defendants as soon as they were ready for delivery. The contract was an order for the goods ; and when they were done, it belonged to the defendants to take them away.

Further, there was to be a *credit* given by the plaintiffs. There must necessarily have been a corresponding *indebtedness* on the part of the defendants. After the credit on the one hand, and the indebtedness on the other, commenced, the property was surely in the defendants.

Again, the contract designated the mode of conveyance which was adopted. The books were to be *shipped*. This is, then, the case of a vendee ordering goods by a particular mode of conveyance ; with regard to which the law is well settled. *Vale* v. *Bayle, Cowp.* 294. *Dutton* v. *Solomonson*, 3 *Bos. & Pull.* 584.

It is not necessary, however, to take this ground ; for if no particular instructions are given as to the mode of conveyance, the vendor may send the goods in the ordinary mode, and a delivery to the carrier will vest the property in the vendee. 3 *P. Wms.* 186. case cited *ibid.* *Cook* v. *Ludlow*, 2 *New Rep.* 119. The principal case is much strengthened by the fact that there had been previous dealings of the same nature between the parties, and the same mode of conveyance had been adopted, and tacitly approved of by the defendants.

2. That *Farrand* could not affect the rights of the plaintiffs by withdrawing from the firm.

SWIFT, J. This was an action to recover payment for books contracted to be delivered to the defendants. It appears that the books were shipped from *New-York* for *Boston* by a packet in the usual course of trade, but were lost on the passage. The defendants, in the first place, contend, that the books were not at their risk, and they are not liable for the loss.

Where a contract is made for the sale of goods which are not delivered, but are to be sent to the purchaser, if the vendor send them in the mode of conveyance agreed on by the parties, or directed by the purchaser ; or if no agreement be

made or direction given, in the usual mode ; or if the purchaser being informed of the mode, assents to it ; or if there have been sales and conveyances of other goods, and the vendor continues to send them in the same mode ; then the goods are at the risk of the purchaser during their passage. In this case, it appears from the contract, that the books were to be sent by water, as interest was to be computed from a certain time after the *shipment ;* that this was the usual mode of conveyance from *New-York* to *Boston ;* that the defendants were duly informed of the shipment of the books, and assented to that mode of conveyance by giving credit for them ; and that sundry other parcels of books on the same contract had been shipped by the plaintiffs, and received by the defendants. Of course, the books in question, when shipped, were at the risk of the defendants, and they are liable to pay for them, though lost on the passage.

It is further insisted on by the defendants, that their copartnership was dissolved prior to the delivery of the books ; and that the plaintiffs could not afterwards deliver them, and bring this action to recover payment for them, but that their remedy is by an action for a breach of contract arising from the dissolution of the copartnership.

Copartners may dissolve their connexion at pleasure, and this is no violation of any subsisting contracts with others ; for they may, and they are bound to perform them in the same manner as if no dissolution had taken place. No action can ever be sustained against them stating a mere dissolution of the partnership as a breach of contract, for they can perform it notwithstanding such dissolution. In the present case, the contract being executory, the plaintiffs could have no right of action till they had performed on their part. If then a dissolution of the copartnership by the defendants could prevent the plaintiffs from delivering the books, and excuse the defendants from receiving or becoming chargeable for them, it would be in the power of a partnership, by its own act of dissolution, to destroy a previous and subsisting contract. This would be directly subversive of the principles on which all copartnerships are founded.

In this opinion the other Judges severally concurred.

New trial not to be granted.