JOHN F. PRINCE, JR., & another *vs.* BOSTON & LOWELL RAIL-ROAD CORPORATION.

Evidence that a consignor of goods shipped them on a vessel, took a bill of lading from one whom he believed to be master of the vessel, and who was personally acting as such, indorsed and sent it to the consignee, and procured a policy of insurance on the goods payable to the consignee, is sufficient to warrant a finding of a delivery to the consignee, who had made advances on the goods; although the bill of lading was signed by one who was not in fact the master, and who had no authority to sign it.

REPLEVIN of 5400 bushels of oats, shipped by the barge St. Roch from St. Valentine in Canada to Burlington in Vermont, and thence brought by railway to Boston.

At the trial in the superior court, before *Reed*, J., the plaintiffs, who were commission merchants in Boston, claimed title under Charles H. Larocque of St. Valentine, and introduced the testimony of Larocque and others, tending to show that Larocque employed Joseph Bissonette, as his agent, to purchase the oats for him and load them on the barge, which was done; that Larocque made a bargain with Joseph Savageau, whom he believed to be master of the barge, and who was personally

acting as such, to carry the oats, notified the plaintiffs by letter dated November 19, 1866, that he was loading the barge with oats to send to them, and subsequently sent to the plaintiffs the bill of lading of the oats, which stated that the oats were shipped by Larocque consigned to the plaintiffs, purported to be signed by Joseph Savageau as master, and was indorsed in blank by himself, and also a policy of insurance procured by himself on the oats payable to the plaintiffs; that the plaintiffs, about the time of the arrival of the bill of lading, accepted and paid, as advances on the oats, a draft drawn by Larocque accompanying the bill of lading, and, on learning of the arrival of the oats at Burlington, arranged with Larocque, by letter and telegram, that they should remain a time on board the barge; and that the oats were afterwards sent, without the plaintiffs' knowledge, to Boston, over the railroad of the defendants, who refused to deliver them to the plaintiffs.

The defendants contended, and introduced evidence tending to show, that Bissonette was the true owner of the oats; that he bought them on his own account, shipped them on board the barge, and received a bill of lading to his own order, signed by Xavier Savageau; and that Xavier, and not Joseph, was the master of the barge. The bill of lading put in by the plaintiffs was not signed by Joseph Savageau with his own hand; but the plaintiffs contended, and introduced evidence tending to show, that he authorized its signature; but this the defendants denied and introduced evidence tending to show the contrary.

The plaintiffs requested the judge to instruct the jury, as follows: "Commission merchants have a lien on goods consigned to them for sale, for advances made thereon specifically or on general account, as soon as the goods are delivered to them or their agents; and a delivery of the goods to a carrier, by the consignor, for transportation to the consignee, is a sufficient delivery, and the lien will attach thereupon. The advance may be made before the goods are delivered, and in anticipation of a shipment, and the lien will still attach as soon as the goods are thereafterwards delivered to the carrier for transportation to the consignee. A consignment may be made on an invoice, or a

bill of lading, or other advices sent without any invoice or bill of lading whatever. If shipped specifically, or on general account, the lien for advances commences the moment the goods are delivered to the carrier for transportation to the consignee, whether any receipt or bill of lading is given by the carrier or not, he receiving and undertaking to carry them. If Larocque was the owner of the oats shipped, and they were delivered on board the barge by him or his agent, Bissonette, for transportation to the plaintiffs, *viâ* Burlington, the master undertaking to receive and transport them over his part of the route, the lien of the plaintiffs attached thereupon at once, for their advances made on the same, either before or after such delivery, both as against Larocque and any one else claiming under him. The possession of a bill of lading, signed by authority and indorsed, although not absolutely necessary to give a title to the plaintiffs, is evidence of title to be considered, if given and had. If the bill of lading was not authorized, yet if the goods were actually sent on the consignment to the plaintiffs in a shipment to them, the lien attached."

The judge declined to give the instructions prayed for; and, among other things, instructed the jury, that the question to be determined was one of title; that the burden was upon the plaintiffs to prove their title; that, if Bissonette bought the goods for himself, the plaintiffs must fail, but that, if he bought the goods for Larocque, and delivered them to him, then the jury "should go further, and see if Larocque passed title to the plaintiffs; that, in this regard, the question who was the master of the barge was to be considered; that they were to inquire who was master; that, if the bill of lading was signed by one who was not the master, and one was signed by the master, then the plaintiffs' bill of lading would have no operation to pass title; that a bill of lading signed by the master, or by his request or authority by another for him, would be valid ; that the jury were to consider the testimony, and if they found that Joseph Savageau was not the master, and that Xavier Savageau was the master and did sign the bill of lading put in by the defendants, then they need go no further; that, if Joseph Savageau was not the master, the verdict should be for the defendants."

" At the close of the charge, the plaintiffs' counsel, excepting to the same and to the omissions to give the instructions prayed for, also called the judge's attention to his ruling upon the plaintiffs' bill of lading if Joseph Savageau was not the master, and contended that a bill of lading was not necessary or essential to pass title; but the judge declined to give any further or other instructions on the subject."

" The judge said to the jury, that, if they found a verdict for the defendants, he should inquire of them whether they found the oats at the time of the shipment to have been the property of Larocque, or of Bissonette. After verdict, he made the inquiry accordingly, and the jury said they were unable to agree upon this point." The verdict was for the defendants; and the plaintiffs alleged exceptions.

There were exceptions to other instructions to the jury and rulings on the admission of evidence; but the decision of the court makes it unnecessary to report them.

*A. A. Ranney*, for the plaintiffs.

*W. Gaston*, (*B. E. Perry* with him,) for the defendants.

COLT, J. The principal contest before the jury, and most of the instructions and rulings of the court, grew out of the respective claims of Larocque and Bissonette to the original ownership of the oats, the present title to which was in controversy.

The plaintiffs claim title under Larocque, by virtue of a consignment to them to cover advances, and a delivery to a common carrier for them. It was conceded that, if Bissonette was the original owner, and shipped the property on his own account, then the title of the plaintiffs must fail.

The jury were unable to agree upon the separate question submitted to them, whether the oats, at the time of shipment, were the property of Larocque or Bissonette. This disagreement renders it unnecessary to discuss many questions, raised at the trial, relating to this part of the case, and which are not now, and may never become, material.

Under the instructions given upon the other branch of the case, namely, upon the question whether Larocque passed his title to the plaintiffs, a general verdict was found for the defend-

ants.   The jury were told, in substance, that the burden was on the plaintiffs to satisfy them, so as not to leave them in doubt, that the bill of lading signed by Joseph Savageau was valid and binding; that a bill signed by one who was not master would have no operation to pass title ; that, if signed by one who was master, or by his request or authority, it would be valid; and that the jury need go no further, if they found that Joseph was not, and Xavier Savageau was, master, and signed the defendants' bill of lading.

These instructions proceed apparently upon the ground that the only mode in which title could be passed from Larocque to the plaintiffs was by transfer of a regular and valid bill of lading to them.   And those of the jury, therefore, who found that Larocque was the original owner of the property, must have been brought to the other conclusion, namely, that there had been no transfer of title from him to the plaintiffs, under the instructions given, by reason of the failure to produce a valid and binding bill of lading.   We must therefore assume, in disposing of these exceptions, that the plaintiffs' claim of the original ownership of Larocque, which has not as yet been negatived by the jury, is well founded, and that he was, at the time of the shipment, the true owner.

It is to be noted, that the question, here presented, does not arise between two persons claiming title to the same property, as holders of two separate bills of lading, one of which is genuine and the other not, and both transferred by the former owner. To such a state of facts, the rulings given would be more appropriate.   The case at bar is narrowed to a controversy between the plaintiffs, claiming to have acquired title from the true owner, and the defendants, who, in disposing of this question, must be regarded as having no title, or rights of possession, derived from him.   And, in the opinion of the court, the instructions given, as applied to this state of the case, were erroneous.

It is too well settled to need a citation of cases, that delivery to a carrier with intent, on the part of the vendor or consignor to pass the property, either absolutely or specially, to the purchaser or consignee, who has made advances, is effectual as a

delivery to that end. The carrier is, in such cases, in contemplation of law, the bailee of the person to whom, and not by whom, the property is sent. And a delivery to him, with no *jus disponendi* reserved to the shipper, is as effectual as if to the consignee himself. It is always a question of the intention with which the act is done. And all acts, declarations and circumstances, accompanying it, and which indicate its purpose, are admissible in evidence.

Taking a bill of lading or shipping receipt in the name of the consignee, or, when taken in the name of the consignor, a transfer to him, is, it is true, the most usual and satisfactory mode of indicating the intention. It is not, however, the exclusive mode. In *Bryant* v. *Nix*, 4 M. & W. 775, 791, Baron Parke, speaking of certain receipts given by the master of a canal boat for oats consigned to a factor who had made advances, says that, " as evidence of such a transaction, it is immaterial whether the instruments are bills of lading or not ; and it might equally be proved through the medium of carriers' or wharfingers' receipts, or any other description of document, or by correspondence alone." So where the bill of lading has not been transmitted to, or reached, the consignee, or when none has been given, the invoice, or any other instrument, which specifies or enumerates the property sold, may be substituted for it. *Haille* v. *Smith*, 1 B. & P. 563. *Anderson* v. *Clark*, 2 Bing. 20. *Gardner* v. *Howland*, 2 Pick. 599. *Gibson* v. *Stevens*, 8 How. 384.

In the case at bar, there was evidence of such delivery, proper to submit to the jury, although the bill of lading was signed by a party who was not authorized. The indorsement by Larocque and delivery of the instrument itself, his letter of November 19 to the plaintiffs, the policy of insurance made payable to them, the testimony of Larocque, with other circumstances connected with the transaction, were admissible to show an actual delivery to a carrier for the plaintiffs. The several instructions, asked for by the plaintiffs, upon this part of the case, should have been given. Under such instructions the jury might not have found for the defendants. 1 Smith Lead. Cas. (6th Am. ed.) 891. Benjamin on Sales. 130, 282, 514.

It is unnecessary to pass upon those exceptions which relate to the rejection and admission of evidence, because on the new trial, which must be had, the questions will necessarily be presented to the court in a different aspect.

*Exceptions sustained.*