MERCHANTS' NATIONAL BANK OF CINCINNATI *vs.* JOHN BANGS.

The defendant ordered S. & Company to send him four car loads of corn at intervals. They sent three car loads, one of which fell short in weight; drew sight drafts on him for the price of the three car loads, as of full weight, which he paid; wrote him that they would send him another car load in a day or two; and subsequently delivered to the railroad corporation a car of corn consigned to the defendant, and received from the corporation a bill of lading, which they attached to a draft on the defendant and delivered them both, the bill of lading unindorsed, but the draft indorsed, to the plaintiffs, who discounted the draft and presented it, before the arrival of the corn, to the defendant, who refused to accept it. The plaintiffs forbade the defendant to take the corn, but, on its arrival, he took it, paying the railroad corporation the freight and charges, including part of the price which had been advanced by the railroad corporation to S. & Company. In an action against the defendant for conversion of the corn, *Held,* that the questions whether the title to the corn vested in the defendant by the delivery to the railroad corporation, and, if not, whether the title ever passed to the plaintiffs, were both for the jury.

TORT for the conversion of a car load of corn. At the trial in the superior court, before *Vose,* J., the plaintiffs, to prove title, put in evidence a sight draft for $451.22, dated at Cincinnati, September 12, 1867, drawn on the defendant by David Schwartz & Company of that city, and indorsed by them, and also a bill

of lading purporting to be signed by an agent of the White Line Central Transit Company, dated at Cincinnati, September 12, 1867, acknowledging the receipt from David Schwartz & Company of one car of corn in bulk consigned to the defendant at Springfield, " which they agree to deliver with as reasonable dispatch as their business will permit." The bill of lading was not indorsed. The plaintiffs also introduced evidence tending to show that the draft, with the bill of lading attached, was delivered by David Schwartz & Company to the plaintiffs on the day of its date, the plaintiffs advancing to David Schwartz & Company the full amount of the draft, less a half per cent. commission; that, when the draft and bill of lading were delivered to the plaintiffs, the corn was being shipped from the depot; that the draft, with the bill of lading, was sent by the plaintiffs to the First National Bank of Springfield, and by them presented for acceptance to the defendant, who refused to accept it; and that the First National Bank, in accordance with a telegraphic dispatch from the plaintiffs, informed the defendant that they had been instructed to hold the corn and not have it delivered, and he must not take it.

The defendant testified that he began dealing with David Schwartz & Company in June 1867, and put in evidence a letter from himself to them, dated July 12, 1867, of which the material part was as follows : " Yours of the 8th is at hand, advising the purchase of car corn, the cost not to exceed here my limits. Supposing the corn to prove, when I see it, as represented, please send me four car-loads of same quality, at lowest price to be had for, not costing here over 1.15 per bushel. I prefer to have one car shipped at one time, and two days thereafter one more, and so on, same for all four ; when I see the corn, may think best to order more." The defendant also put in evidence three letters to himself from David Schwartz & Company, the material parts of which were as follows : (1) " July 15, 1867. We are this day in receipt of your favor of 12th inst. acknowledging receipt of advices of shipment of corn, and ordering four cars, to be shipped at intervals, to cost not over 1.15 at your place. Your order will have due attention; and will fill at best possible price."

(2) "July 17, 1867.   We have this day purchased for your account one car corn, which will cost one dollar and fifteen at Springfield.   Will ship to-morrow and draw on you next day." (3) " July 19, 1867.   We have effected purchase three cars corn, balance of order for four cars same quality as first shipment — at same rate — to cost one dollar and fifteen in Springfield. There is a scarcity of White Line cars at present, but will get one car off Monday and ship balance as directed."

The defendant further testified " that he received the first three car loads of corn in regular time, and paid the drafts of David Schwartz & Company, drawn against them, as they were presented ; that the transactions of David Schwartz & Company in corn were very peculiar; that they received quite a large advance on the corn from the railroad company at Cincinnati, and had it entered on the bill of lading as charges ; that one car load of the corn fell short of the weight represented by David Schwartz & Company ; and that he paid for about 1000 lbs. more of corn than he received on the first three car loads."

The defendant then put in evidence two other letters to himself from David Schwartz & Company.   The first, which was dated September 2, 1867, was as follows : " Your favor of 17th August has been received and overlooked, for which please pardon.   Have been under the impression that we had filled your order for four cars corn at 1.15 in Springfield, but now find that we have shipped you only three.   It was an act of negligence upon our part, and will make it good by sending you one car in day or two, to cost that price, 1.15."   The second letter, dated September 9, 1867, was as follows: " The writer has been absent, and finds on his return that car corn due you has not been shipped.   Sorry it was neglected, but are shipping to-day and will have your bill of lading, &c., tomorrow."

The defendant also testified that " the next he heard from David Schwartz & Company was the presentation of the draft by the First National Bank, which the defendant refused to accept; that the draft was $350 larger than it should be, with corn at $1.15 per bushel, according to the weight in the bill of lading, and $300 larger than it should be at $1.37½ per bushel, the then

market price; that he had several interviews with the president of the First National Bank, in which the latter said he should claim the corn for the plaintiffs; that afterwards he had notice from the Western Railroad Corporation at Springfield that said car of corn was there for him; that he paid the sum of $297 on September 24, 1867, for freight thereon and advanced charges, including $150 advanced by the railroad at Cincinnati to the consignors, and took away the corn; and that the actual weight of the corn thus taken by him was 17,020 lbs., and the measure thereof about 304 bushels."

Upon the foregoing evidence, which was all the material evidence in the case, and was not controverted on either side, the judge ruled, for the purposes of the trial, that the plaintiffs were entitled to recover the value of 304 bushels of corn at $1.37½ cents per bushel, the market price at Springfield September 24 1867, without any deduction for freight and advances paid by the defendant, and directed a verdict for the plaintiffs accordingly, which was rendered; and the defendant alleged exceptions.

*H. Morris*, for the defendant.

*G. M. Stearns*, for the plaintiffs.

COLT, J. The defendant claims title to the property in dispute, under an order given for four car loads of corn, to David Schwartz & Company of Cincinnati, which the latter undertook to fill. He produces the written correspondence with them, and relies upon the transactions which followed, to prove delivery. Three car loads were sent at intervals of time, according to orders, and the drafts of David Schwartz & Company, drawn against them, were paid by the defendant as they were presented. The car load in question, being the last of the four, arrived in Springfield, and was taken by him upon payment of freight and charges of transportation, but without paying the draft drawn against it.

The plaintiffs claim title by virtue of the discount of a draft of David Schwartz & Company upon the defendant, which was presented with a bill of lading annexed, for the car load of corn in question, marked and consigned to the defendant at Springfield.

Merchants' National Bank *v.* Bangs.

To sustain the ruling of the court below, it must appear as matter of law, upon the evidence reported, that the defendant did not first acquire title from the original owners good against the plaintiffs, and if he did not, that then the plaintiffs did acquire sufficient property to maintain this action in their own name.

In all completed contracts of sale, property in the goods sold passes to the buyer, although they may not have come to his actual possession. An unconditional sale of specific chattels passes the title at once, and the buyer takes the risk of loss, and has the right to immediate possession. When anything remains to be done, in the way of specifically appropriating the goods sold to the contract, the agreement is executory and the property does not pass. When, from the nature of the agreement, the vendor is to make the appropriation, then, as soon as any act is done by him, identifying the property, and it is set apart with the intention unconditionally to apply it in fulfilment of the contract, the title vests, and the sale is complete. Thus the delivery to the buyer or his agent, or to a common carrier, consigned to him, whether a bill of lading is taken or not, if there is nothing in the circumstances to control the effect of the transaction, will be sufficient. If the bill of lading, or other written evidence of the delivery to the carrier, be taken in the name of the consignee, or be transferred to him by indorsement, the strongest proof is afforded of the intention to transfer an absolute title to the vendee. But the vendor may retain his hold upon the goods to secure payment of the price, although he puts them in course of transportation to the place of destination, by delivery to a carrier. The appropriation which he then makes is said to be provisional or conditional. He may take the bill of lading or carrier's receipt, in his own or some agent's name, to be transferred on payment of the price, by his own or his agent's indorsement to the purchaser, and in all cases when he manifests an intention to retain this *jus disponendi*, the property will not pass to the vendee. Practically the difficulty is to ascertain, when the evidence is meagre or equivocal, what the real intention of the parties was at the time. It is properly a question

of fact for the jury, under proper instructions, and must be submitted to them, unless it is plain as matter of law that the evidence will justify a finding but one way. *Allen* v. *Williams*, 13 Pick. 297. *Stanton* v. *Eager*, 16 Pick. 473. *Stevens* v. *Boston & Worcester Railroad Co.* 8 Gray, 262. *Coggill* v. *Hartford & New Haven Railroad Co.* 3 Gray, 545. *Moakes* v. *Nicolson*, 19 C. B. (N. S.) 290. *Godts* v. *Rose*, 17 C. B. 229. *Tregelles* v. *Sewell*, 7 H. & N. 574. Benjamin on Sales, 245.

It is plain, in the case at bar, that if the title vested in the defendant, by the delivery to the carrier, there would be an end of the plaintiffs' case, for the title of the bank was subsequently acquired from David Schwartz & Company, and the court below must therefore have held, as matter of law, that the title to the corn did not vest by the delivery in the defendant. This question we think should have been submitted to the jury. It is, as we have seen, a question of intention, to be determined by a consideration of the correspondence, the course of dealing, and the facts connected with the delivery, the whole presenting several items of evidence, some of which are not wholly consistent with the theory of either party. It is the appropriate province of the jury to pass upon them.

The defendant further insists that, even if the title did not in fact vest in him, yet the plaintiffs have shown no title to maintain this action in their own name. And the court are of opinion that this question also should have been submitted to the jury. If the title remained in David Schwartz & Company, after the delivery to the carrier, without doubt they might pledge or transfer it as they chose. Such transfer might have been made by an indorsement of a bill of lading taken in the name of the consignor. That is one mode, certainly the most usual mode, of symbolical delivery, when goods are in course of transportation. It is not the only mode. It may be by correspondence; by an order for delivery; by bill of sale; and, as between the parties, by any agreement upon good consideration, by which the one takes and the other gives a title.

The facts stated in this case are not sufficiently distinct and decisive to make it clear, as a matter of law, that the transaction

between David Schwartz & Company and the plaintiffs was an actual transfer of property to them by way of pledge or security. The draft, in the ordinary course of the mails, would be pre-sented for payment before the arrival of the property upon which it was drawn, and David Schwartz & Company would have been notified, by telegraph or otherwise, of its nonpayment, in time to prevent the property from coming to the possession of the defendant. It is argued that the facts are equally con-sistent with a purpose to constitute the bank only an agent to deliver the bill of lading to the defendant, to whom the property by its terms was consigned, on payment of the draft; and that the right of action, if any, for the alleged conversion is still in David Schwartz & Company. In the case of *Stone* v. *Swift,* 4 Pick. 389, it was held that a bill of lading, sent unindorsed in a letter, containing no words of transfer, did not give the party receiving it a claim to the property. *Prince* v. *Boston & Lowell Railroad Co.* 101 Mass. 542.

Upon the rule of damages in the event of a recovery by the plaintiffs, see *Dresser Manufacturing Co.* v. *Waterston,* 3 Met. 9; *Pierce* v. *Benjamin,* 14 Pick. 356; *Kaley* v. *Shed,* 10 Met. 317; *Adams* v. *O'Connor,* 100 Mass. 515.

*Exceptions sustained*