JAMES E. ODELL *vs.* BOSTON & MAINE RAILROAD.

The plaintiff bought hay from J. S., to be delivered to the plaintiff at the depot of the defendants, who were common carriers, and be carried by them to him at a place where it was to be weighed.   J. S. delivered the hay to the defendants, at their depot, and directed them to mark it with the plaintiff's name and carry it to him at that place, but after they had carried it to the place directed them to deliver it to a third person. *Held*, that the title passed to the plaintiff on the delivery of the hay to the defendants, and that they remained liable to him therefor.

CONTRACT against a railroad corporation whose road ran from Exeter in New Hampshire to Boston, to recover the value of forty-four bales of hay alleged to have been delivered by the plaintiff to the defendants at Exeter for transportation to Boston, and which they failed to deliver to him.

At the trial in the superior court, before *Putnam*, J., it appeared that the plaintiff made a contract with John Swasey, at Exeter, for the purchase from Swasey of a lot of hay to be delivered to the plaintiff at the depot of the defendants in Exeter, and for which he was to pay $22 per ton ; that the bargain was then completed, but the hay was to be weighed by the hay inspector in Boston, after its arrival there ; that Swasey brought forty-four bales of hay, part of said lot, to the defendants' depot in Exeter, delivered it to the defendants' agent, and directed him to place a tag mark, with the plaintiff's name, on the bales, and ship them to the plaintiff in Boston ; and that this hay was wrongly billed by the defendants' agent to Norris & Neal, and upon its arrival in Boston was delivered by the defendants to Norris & Neal, and was never received by the plaintiff. There was no evidence that the defendants had any knowledge of the contract between the plaintiff and Swasey, or any information as to the ownership of the hay at the time of its shipment, other than as above mentioned.

The defendants introduced evidence tending to show that, upon arrival of the hay in Boston, it was found that some mistake had been made in billing it, and thereupon it was stored on the defendants' account in the storehouse of Norris & Neal, until inquiry could be made as to the proper person entitled to receive it ; that, by direction of the defendants, their agent at Exeter called upon Swasey, informed him of the facts and of the mistake made, and requested of him further instructions ; that Swasey replied that it would make no difference, that the hay might be delivered to Norris & Neal, and he would look to them for payment ; that thereupon the defendants, in consequence of this statement, delivered the hay to Norris & Neal ; and that Swasey had previously sent hay by the defendants to Norris & Neal, and had requested the defendants' agent at Exeter to provide transportation of other hay to them.

The judge ruled, for the purposes of the trial, that the delivery of the hay to the defendants' agent in Exeter vested the property in the plaintiff ; that no subsequent act of Swasey could affect this ownership, or authorize delivery of the hay to any other per

son, as against the plaintiff; and that the facts which the defendants' evidence tended to prove would constitute no defence to the action; and directed a verdict for the plaintiff, which was returned, and the defendants alleged exceptions.

*C. F. Choate*, for the defendants.

*D. F. Fitz*, for the plaintiff.

WELLS, J.   By the contract of purchase the hay was to be delivered by Swasey, the seller, to the plaintiff, at the depot of the defendant in Exeter.   Swasey did deliver the hay sued for, at the place agreed on, directing it to be marked with the plaintiff's name and transported to him in Boston.   As a carrier, it was the business and the duty of the defendant to receive the hay and transport it as directed.   Upon receipt of the hay by the defendant, the title became immediately vested in the plaintiff.   The provision for weighing, after its arrival in Boston, was merely to determine the amount to be paid by the plaintiff. Neither his title to the hay nor his obligation to pay for it depended upon a compliance with that provision.

The defendant, having made a misdelivery of the hay, is liable to the owner for its value, unless protected by some ground of excuse by which the plaintiff is bound.

The defence relied on is that Swasey authorized its delivery to the parties to whom the defendant's agent had, by mistake, directed it; and that it was delivered accordingly, without notice that Swasey had ceased to have the right to control its destination.

But the hay had already been sent forward.   The defendant had no right to assume that it was then the property of the consignor and not of the consignee.   If it did so, it took the risk of the consignor's title proving to be good.

It is contended that the defendant rightly followed the instructions of Swasey, as agent of the plaintiff in forwarding the hay. But Swasey did not profess to act for the original consignee in the directions he then gave.   Upon the defendant's evidence, those directions were manifestly given by way of changing the destination of the hay to other consignees, and not by way of correcting or explaining the mistake in its entry upon the way bill.

under the directions previously given. Besides, Swasey had no authority to change its destination.

In either aspect, the defence fails. *Exceptions overruled.*