## CHARLES C. HARVEY *vs.* HORATIO HARRIS & another.

Damaged flour was offered for sale at auction, divided into two classes. One class, slightly damaged, was offered by the barrel, in the barrels in which it was originally packed. The other, much damaged, had been repacked, and was offered by the pound as repacked flour or "dough." The sale took place in an auction room; the flour was in the street outside. After the auctioneer had sold, as he thought, all of the first class, he offered for sale the second class, stating the differences between the two classes. The plaintiff, who was the highest bidder, selected by their numbers two rows of barrels as the flour he would take. These rows were made up of barrels of flour of the first class, accidentally misplaced without the knowledge of the owner or auctioneer. *Held*, there had been no sale, as the minds of the parties had not met as to the subject matter of the sale.

CONTRACT for the breach of an agreement to deliver ninety-four barrels of flour purchased by the plaintiff, at auction, of the defendants.

At the trial in the Superior Court, before *Lord*, J., it appeared that the defendants, who were auctioneers, advertised a quantity of "damaged flour" belonging to one Spring for sale at auction. The flour was part of a cargo which had been damaged by water,

and had been afterwards assorted and prepared for sale in **this** manner. So far as the barrels and the brands on them had not been badly wet or stained, nor any considerable injury done to their contents, they were left untouched, or in their " original packages," and were to be sold by the barrel ; as to the cther bar-rels, when the water had penetrated so as to saturate and stiffen the flour to a considerable extent, and to discolor and stain the barrels badly, they were opened, overhauled, and the flour re-packed in a smaller number of the same barrels which had con-tained it before the injury by water, and the barrels in which this repacked flour was put were marked " dough " on the heads. The flour was arranged for sale by placing the barrels in rows, or tiers, on the pavement outside the store of the defendants, for prior in-spection and examination. There were sixteen of these rows or tiers of barrels, numbered, consecutively, from 1 upward. Spring testified that all the flour in what he called " original packages," to be sold by the barrel, was placed together in the tiers bearing the lower numbers, to be first offered for sale ; and all the repacked flour, marked " dough," to be sold by weight, was placed together in tiers bearing the higher numbers, and the two classes of tiers were separated from each other by an open space of about ten feet in width. He also testified that, when he gave his instructions to the auctioneers, he was not aware that there were more than eight tiers of the original packages in all, and he understood that all the tiers numbered above eight consisted of the repacked flour marked " dough," and that he gave instructions that, after having sold the first eight tiers by the barrel, the auctioneers should then offer the repacked flour for sale by the pound ; that, as a matter of fact, between the time when he last examined the flour, at nine o'clock on the morning of the sale, and the hour of sale, which was eleven o'clock, two more tiers of the flour in " original packages " had been inserted next adjoining tier No. 8, and had been numbered respectively 9 and 10, by his teamster, without the knowledge of himself or of the defendants.

The owner was present at the sale, which, on account of un-favorable weather, took place inside the store, the flour being out-side. The auctioneers used a card containing the same numbers,

from 1 to 16, which belonged to the tiers outside, beginning with No. 1, and proceeding consecutively. On commencing the sale, the auctioneers said to the company present: " It has seldom been an auctioneer's privilege to offer such high grades of flour so slightly damaged, and in such fine condition for baker's use or otherwise ; ten pounds of damaged flour unfit for a baker is a fair estimate on the whole lot. We shall commence with lot No. 1, with the privilege of the next three lots, say Nos. 1, 2, 3 and 4, comprising four well known brands, worth to-day, if in good condition, in this market, over $10 per barrel. Shall sell lot No. 5, giving the buyer privilege of lot No. 6 ; lot No. 7, with privilege of lot No. 8, and the forty half barrels. No deductions to be made of any kind. The repacked lot, being the dough and dry flour taken from about 1500 barrels of the worst damaged of the cargo, being irregular as to weight, will be sold by the pound, the tares to be called twenty-two pounds each, to be weighed after the sale by William Bradbury, and his return to be final. All to be taken away immediately." After the auctioneers had sold the first eight tiers by the barrel, at prices of $6.25 or more per barrel, they stated to the company present that they now offered for sale the repacked flour taken out of some 1500 barrels, and, owing to inequality of weights, they should sell it by the pound, with the privilege to the buyer of taking any number of the remaining tiers. Upon this offer, the plaintiff having been the highest bidder at one and three-fourth cents per pound, was asked what he would take under his bid ; he said he would take the two tiers, 9 and 10. The auctioneers then proceeded to sell the remaining tiers, and did sell them at one and one half cents per pound. The owner, immediately after the sale, discovered that tiers 9 and 10 consisted of flour in what he called " original packages," and he informed the defendants of the fact, and forbade its delivery to the plaintiff, and the defendants notified the plaintiff of this. The plaintiff tendered the price bid by him, and demanded the flour, and the defendants refused to deliver it.

It appeared in evidence that the defendants did not intend to offer any of the flour in what were called " original packages " by the pound, and that the plaintiff did not intend to buy at any price any of the barrels marked " dough."

The plaintiff offered evidence tending to show that the term "repacked" flour was employed so as to include dry flour which had been taken out of the barrels in which it was first packed, and replaced in the same or in other barrels, as well as flour which had been wet so as to become what is called "dough." The defendants offered evidence tending to show that the term "repacked" flour was one of common use in the trade to designate such unsound or damaged flour as had been taken out of the original packages in which it was placed by the manufacturers for sale, and overhauled and put back again, either into the same barrels or others; that such repacked flour as was embraced in this auction sale, marked "dough," was made heavy by water, and varied widely in the weight of the barrels from that in the original barrels or packages; that it was fit only for making starch, or to be fed to hogs.

The defendants contended, as a matter of law, that if the auction sale included two sorts of damaged flour, classified by them as "original packages," and as "repacked," respectively, the two differing widely both in quality, condition, appearance and value, and if by their own mistake or error they offered certain lots, including those claimed by the plaintiff, as and for "repacked" flour, which in fact were not such as they called "repacked" flour, which were not known to them to be on their sale-list, and discovered their error and notified the plaintiff of it immediately after the sale, such error would in law excuse them from liability to the plaintiff to deliver the flour in original packages claimed by him, whether the plaintiff knew of the mistake of the defendants in this respect or not, and they requested the presiding justice so to rule.

The court declined so to rule, but ruled that if the sale by the defendants was a sale of "damaged flour," and if the flour offered came under or within that general description, (tiers Nos. 9 and 10 included,) then the article offered and struck off to the plaintiff passed to him by such sale; that in such case, the general description of the article to be sold being correct, or including the article offered, the extent of the damage was immaterial; that if the defendants supposed the article to be "dough," and yet offered

it for sale under such a name as described, or embraced this par-
ticular article in question, they must bear the consequences of
their mistake, and the plaintiff was entitled to recover, unless it
is made to appear that the plaintiff knew that the defendants
were laboring under this mistake; in which case he could not
take advantage of their mistake, and there was no sale, and the
plaintiff could not recover.

The jury found a verdict for the plaintiff, and the defendants
alleged exceptions.

*F. A. Brooks & F. Morison*, for the defendants.

*T. S. Dame*, for the plaintiff.   When the thing sold comes
within the description given at the sale, and the mistake concerns
the quality of the article only, the vendor is bound by his con-
tract.   *Gardner* v. *Lane*, 9 Allen, 492, 500.   *Scott* v. *Littledale*,
8 El. & Bl. 815.   *M'Ferran* v. *Taylor*, 3 Cranch, 271.   *Rice* v.
*Dwight Manuf. Co.* 2 Cush. 80, 87.   Story on Sales, § 156.

MORTON, J.   The evidence at the trial tended to show the fol-
lowing facts:   The defendants offered for sale at auction a quan-
tity of damaged flour.   It was divided into two classes: one,
being but slightly damaged, was offered for sale in the original
packages or barrels, and was to be sold by the barrel; the other,
being more damaged, had been repacked, and was offered as re-
packed flour or " dough," and was to be sold by the pound.   The
flour was arranged in tiers or lots numbered from 1 to 16, a space
of about ten feet being left between the flour to be sold by the
barrel and the " dough," and was not in the room where the sale
took place.   After the auctioneers had sold the first eight tiers
by the barrel, they stated to the company present that they now
offered for sale the repacked flour, taken out of some 1500 bar-
rels, and that, owing to inequality of weights, they should sell it
by the pound, with the privilege to the buyer of taking any num-
ber of the remaining tiers.   The plaintiff was the highest bidder,
and being asked what he would take under his bid, said he would
take the two tiers numbered 9 and 10.   The defendants then pro-
ceeded and sold the remaining tiers to other buyers.   Immediately
after the sale, it was discovered that tiers numbered 9 and 10 did
not consist of " repacked flour," but of flour in the original pack

Harvey *v.* Harris.

ages, which had been placed next to tier No. 8 by the defendants' teamster, without the knowledge of the defendants or of the owner

The learned judge who presided at the trial instructed the jury that if the sale by the defendants was a sale of " damaged flour," and if the flour offered and struck off to the plaintiff came under or within that general description, it passed to him by the sale ; that if the defendants supposed the article to be dough, and yet offered it for sale under such a name as described this particular article in question, the plaintiff was entitled to recover, unless he knew that the defendants were laboring under this mistake. We are of opinion that this instruction was erroneous. To constitute a contract of sale, there must be an agreement by the vendor that the specific articles shall pass to and become the property of the vendee. It is true, that if there is a mutual agreement of the parties for the sale of particular articles of property, a mistake or misapprehension as to the quality of the articles will not enable the vendor to repudiate the sale. *Gardner* v. *Lane*, 9 Allen, 492. The case at bar falls near the line, but we think it is within the class of cases where there is not a meeting of the minds of the parties as to the subject matter of the sale. The article which the defendants offered to sell to the plaintiff was " repacked flour " or " dough ; " the article which the plaintiff claims is flour in the " original packages." If two tiers of barrels of sugar had by mistake been placed with the flour, and numbered 9 and 10, it would hardly be contended that the defendants were obliged to deliver or the plaintiff to accept the sugar. The principle is the same, though the two tiers consisted of barrels containing flour, or " damaged flour." The defendants, with the knowledge of the bidders, divided the damaged flour into two classes, identified by different marks. They agreed to sell to the plaintiff flour of the second class. The plaintiff claims flour of the first class. It seems to us that there was a mistake as to the identity of the article sold, and not merely as to its quality, and that it is a case within that class where, through mistake, a contract which the parties intended to make fails of effect because they did not in fact agree as to the subject matter.     *Exceptions sustained.*