## TAYLOR WHEELHOUSE *vs.* WILLIAM PARR.

Middlesex.    March 11. — May 8, 1886.    W. ALLEN & HOLMES, JJ.,
absent.

B., in this Commonwealth, ordered goods by mail of A., in England, with instructions to "ship to care of M., shipping merchant, L., as soon as possible, for his next steamer." M. was a shipping merchant at L., and owner and agent of the C. line of steamers. This order was filled by A., and the goods were shipped by the C. line and duly received by B. Subsequently B. wrote to A., acknowledging the receipt of these goods, and ordering more goods, saying: "As regards the shipping of the goods just received, you have done everything satisfactory. Ship this order in like manner." The goods were sent, according to B.'s instructions, to M., who, upon receiving them, wrote to A. as follows: "Are we to keep them for our steamer sailing 14th inst., or ship by the G., which is a very slow steamer sailing 7th inst., and will not, we think, arrive out before our steamer?" The G. was a steamer belonging to a line for which M. was not the agent, and of which steamer he was not the owner. A. replied to M.'s letter as follows: "Send the goods by the steamer which will arrive first." Thereupon, without further instructions of any kind, M. caused the goods to be shipped by the G., which foundered in mid-ocean, and the goods were lost. *Held*, that A. could not maintain an action against B. for the price of the goods.

CONTRACT, upon an account annexed, for goods sold and delivered. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows:

---

The plaintiff is a tanner, currier, and leather merchant, having his place of business at Brighouse, England. The defendant is a manufacturer of leather belting in Lowell, in this Commonwealth.

On November 3, 1882, the defendant sent to the plaintiff, by mail, an order for leather goods, with instructions to " ship to care of D. & C. McIver, shipping merchants, Liverpool, as soon as possible, for their next steamer to Boston direct." This order was filled by the plaintiff, and the goods were shipped by the Cunard line by D. & C. McIver, and were duly received by the defendant. On December 16, 1882, the defendant wrote to the plaintiff, acknowledging the receipt of said goods, enclosing sight draft in payment for the same, and ordering the goods described in the plaintiff's declaration, saying : " As regards the shipping of this leather just received, you have done everything satisfactory. Ship this order in like manner."

D. & C. McIver, referred to in the shipping instructions, were at that time shipping merchants and part or sole owners and agents of the Cunard line of steamers.

The goods were properly prepared for shipment, and sent to D. & C. McIver in accordance with the defendant's instructions. D. & C. McIver received them at Liverpool on or about February 1, 1883, and on that day wrote the plaintiff as follows : " The five bales of leather have arrived. Are we to keep them for our steamer sailing 14th inst., or ship by the Glamorgan, which is a very slow steamer sailing 7th inst., and will not, we think, arrive out before our steamer ? "

The Glamorgan was a steamer belonging to the Warren line, for which D. & C. McIver were not the agents, and of which steamer they were not the owners.

The plaintiff replied to said letter as follows : " Send the bales by the steamer which will arrive first."

Thereupon, without further instructions of any kind, D. & C. McIver caused the goods to be shipped by the Glamorgan, which foundered in mid-ocean, and the goods were lost. There was no insurance on them.

If, upon these facts, the plaintiff could recover, judgment was to be entered for the amount claimed ; otherwise, for the defendant.

*W. H. Anderson*, for the defendant.

*F. W. Qua & F. P. Marble*, for the plaintiff.

DEVENS, J. When goods ordered and contracted for are not directly delivered to the purchaser, but are to be sent to him by the vendor, and the vendor delivers them to the carrier, to be transported in the mode agreed on by the parties or directed by the purchaser, or, when no agreement is made or direction given, to be transported in the usual mode; or when the purchaser, being informed of the mode of transportation, assents to it; or when there have been previous sales of other goods, to the transportation of which in a similar manner the purchaser has not objected, — the goods, when delivered to the carrier, are at the risk of the purchaser, and the property is deemed to be vested in him, subject to the vendor's right of stoppage *in transitu.* This proposition assumes that proper directions and information are given to the carrier as to forwarding the goods. *Whiting* v. *Farrand*, 1 Conn. 60. *Quimby* v. *Carr*, 7 Allen, 417. *Finn* v. *Clark*, 10 Allen, 479, and 12 Allen, 522. *Downer* v. *Thompson*, 2 Hill, (N. Y.) 137. *Foster* v. *Rockwell*, 104 Mass. 167. *Odell* v. *Boston & Maine Railroad*, 109 Mass. 50. *Wigton* v. *Bowley*, 130 Mass. 252.

The defendant had made a purchase of leather in November, previously to the purchase of that the price of which is in controversy, under a direction to the plaintiff to "ship to care of D. & C. McIver, shipping merchants, Liverpool, as soon as possible, for their next steamer to Boston direct." This shipment was made as ordered; and, on December 16, 1884, the defendant sent a further order, saying: "As regards the shipping of the leather just received, you have done everything satisfactory. Ship this order in like manner."

The directions by which the plaintiff was to be controlled must be interpreted as requiring him to forward the goods to D. & C. McIver, to be transported by them by the Cunard line, of which they were managers and agents. The words "their next steamer" could not have meant any steamer which would accept freight from D. & C. McIver. Cases may be readily imagined where these words would be of the highest importance, as if the defendant had an open policy of insurance protecting his goods which might be sent by the Cunard line. It might

also be true that the defendant would not deem a policy of in‑ surance necessary when goods were sent by a well-established passenger line, where greater precautions might probably be taken for safety, which he would deem necessary when they were sent by a purely freighting steamer. The goods were actually forwarded to D. & C. McIver, with instructions in con‑ formity with the directions of the defendant; and, had the mat‑ ter ended there, so far as any directions to D. & C. McIver is concerned, the plaintiff would be entitled to treat them as de‑ livered to the defendant, and to require him to pay the purchase money. If, on the other hand, while the goods were yet in the hands of the carrier, and before transportation of them had com‑ menced, the plaintiff changed the directions given to him by the defendant, or authorized the carrier to transport them in a different mode from that directed by the defendant, and loss has thereby occurred, he cannot contend that they were delivered to the defendant by him. By continuing to exercise dominion over them, and by giving a new direction impliedly withdraw‑ ing the directions previously given, he cannot be allowed to assert that he had made a complete delivery by his original act, if a loss has occurred by reason of that which he has subse‑ quently done or directed. The change in the directions given relates back to and qualifies the original delivery.

The plaintiff, in answer to a letter from D. & C. McIver, after the goods had reached them, inquiring whether they were to keep the goods "for our steamer 14th inst., or ship by the Glamorgan," ordered them to be shipped by the steamer arriv‑ ing out first, presumably the steamer which D. & C. McIver believed would be the first to arrive. The Glamorgan was not a steamer of any line of which D. & C. McIver were owners or agents, and in no way answers the description of "their steamer" as applied to D. & C. McIver. By neglecting to limit the authority of D. & C. McIver to send by a steamer which could be thus described, and by directing them to send by the steamer which would first arrive, the plaintiff had failed to comply with the orders of the defendant as to the shipment of goods, and, if correct directions had originally been given, had withdrawn them and substituted others. When, therefore, exercising the authority thus given by the plaintiff, D. & C. McIver send by

the Glamorgan, as being in their judgment the steamer likely to arrive first, and a loss occurs, it should not be borne by the defendant, whose directions have not been followed.

*Judgment for the defendant.*