EDWARD M. ALDEN & another *vs.* SAMUEL C. HART & another.

Suffolk.　January 11, 1894. — June 22, 1894.

Present: FIELD, C J., ALLEN, MORTON, & BARKER, JJ.

*Sale — Implied Warranty of Quality — Rescission of Contract.*

In a commercial contract for the sale and delivery of a cargo of coal, there is an implied warranty that it shall be of merchantable quality.

If it be assumed that in a commercial contract for the sale and delivery of a cargo of coal the title to the coal passed to the vendee when it was selected by the vendor, laden on board a barge designated by the vendee, and bills of lading therefor were given to the vendor under which the cargo was to be delivered to the vendee, he paying the freight, such a title was conditional on the coal being

found to be of the quality purchased, and, if upon examination the coal did not conform to the implied warranty that it was merchantable, the vendee was entitled to reject it.

In a commercial contract for the sale and delivery of a cargo of coal laden on board a barge designated by the vendee, the only bill of lading received by the vendee was one to which the captain of the barge was entitled, and which, he having sailed before it was completed, was forwarded for his use to the consignee, who was the vendor, and by him sent with the invoice to the vendee. The captain, on arrival, demanded the bill of lading of the vendee, who delivered it to him, after having made upon it the customary indorsements of the arrival of the barge ready to discharge, and of its afterward being towed from the vendee's wharf and anchored in the stream. The vendee immediately upon the arrival of the barge examined the cargo, found it unsatisfactory, and gave notice to the vendor that he refused to receive it, and the vendor, upon examination, admitting it to be unsatisfactory, attempted to dispose of it elsewhere. *Held*, that, assuming the title to the coal to have passed to the vendee, subject to examination and acceptance or rejection by him, he had done everything necessary to a rescission of the contract.

CONTRACT, to recover the value of a cargo of coal. Writ dated September 6, 1892.

Trial in this court, without a jury, before *Barker*, J., who found for the defendants, and, at the request of the plaintiffs, reported the case for the consideration of the full court, in substance as follows.

On June 29, 1892, in a conversation by telephone, the plaintiffs and defendants made an oral bargain for the sale and purchase of a cargo of Barton coal, and on the same day the plaintiffs wrote the defendants a letter, in which, after recapitulating the conversation, they said, " We also told you that we could enter your order for 750 tons shipped per Bee Line barge for immediate shipment . . . f. o. b. Weehawken. We have sent the order forward. You can cancel this to-morrow if you find you have not room for it, but we must ask you to *telegraph* us the *first thing in the morning*, so that we may know just where we stand. We would say that ' Barton ' coal is second to no free burning coal mined, both as regards quality and preparation."

In response to this letter the defendants telegraphed, " You may ship the cargo to us at once."

On June 30, the plaintiffs wrote to the defendants, " Your despatch (You to ship cargo to us at once) received. Order has been entered and accepted, and cargo will be shipped promptly."

The defendants, in the telephone conversation of June 29, in

reply to a question of the plaintiffs as to how the cargo should be shipped, replied, " By the Bee Line of Barges."

The cargo of coal, the parties understood, was not in Boston nor in New Bedford, nor then existing as a cargo, but was to be loaded and shipped from Weehawken, New Jersey, and was to be taken to New Bedford, the defendants paying the freight. By custom, duplicate or triplicate bills of lading were made out, one of which was for the master of the barge.

On July 20, 1892, the coal was shipped on board a barge of the Bee Line Company at Weehawken, and consigned to the defendants at New Bedford, neither the plaintiffs nor the defendants having seen the coal at Weehawken. The master left the wharf before the bills of lading were complete, and directed his copy to be sent to the consignee for him. On July 22 the plaintiffs forwarded to the defendants an invoice, and the captain's bill of lading, marked " Captain's B / L," which the judge found was the only one sent to the defendants. It contained the following indorsements : " Arrived ready to discharge, Wednesday, July 27th, at 7 A. M." " Towed from Hart & Akin's wharf and anchored in stream, Wednesday, August 10th, at 8 A. M."

The defendants received the invoice and bill of lading, and entered them upon their books, but held the bill of lading for the captain of the barge, and delivered it to him subsequently, in accordance with the custom of the port, when the barge was towed into the stream. The barge arrived in New Bedford on the evening of July 26. Early on the morning of the 27th the captain reported to the defendants, and offered to discharge the cargo. The hatches were removed, and the defendants' laborers made preparations for discharging the vessel ; but before beginning to discharge, the defendants went on board the barge, a little before seven o'clock, and, upon inspection of the cargo, stopped all proceedings for discharging the vessel, and telegraphed to the plaintiffs, " Bluebird arrived, condition cargo unsatisfactory, we refuse the cargo."

The plaintiffs immediately replied by telegraph, " Alden will be at your office to-day at one forty-five."

After telegraphing, at about eight o'clock of the same morning, the defendants, at the request of the master of the barge, and in accordance with the custom of the port, indorsed on the

bill of lading, "Arrived ready to discharge, Wednesday, July 27th, at 7 A. M."; and on the same day the defendants and the plaintiffs had an interview at New Bedford. At this interview Hart and Alden went on board the barge and examined the cargo of coal. Hart thereupon told Alden that the cargo of coal was not such coal as they had bought, and that they would not take it, and would not under any circumstances receive it; that it was not merchantable coal, and that they would not have it. Alden expressed himself that the coal was not of the quality it should have been, nor was it such quality of coal as he had sold him, and it did not correspond to the representation. Alden said he would try to sell the cargo to other parties, and thereupon called upon other persons and offered to sell the cargo. Alden afterwards saw the coal several times, inspected and examined the same, visited the coal dealers in Taunton, Attleborough, Brockton, Whitman, places on Cape Cod, and other places, and made various attempts to sell the said cargo, but did not succeed.

On July 30, 1892, the defendants wrote to the plaintiffs: "Since your Mr. Alden was here the writer has more carefully than before examined the cargo coal of barge Bluebird, and fully confirmed our first examination and report. The coal is poorer in quality and preparation than at first we believed it to be. We shall want the berth where the Bluebird lies early next week."

The barge lay at the defendants' wharf until August 10, when it was towed into the stream, and at that time the captain demanded the bill of lading as his, and the defendants delivered it to him, after having indorsed upon it, in accordance with the custom of the port, "Towed from Hart & Akin's wharf, and anchored in stream, Wednesday, August 10th, at 8 A. M."

From July 27 to August 19 the plaintiffs were trying to sell the cargo, and made no claim on the defendants therefor. On August 19 they wrote to the defendants, "If you positively refuse to take the cargo of coal shipped per barge Bluebird, July 20, we shall sell the same at once for your account, and shall charge you with all losses that may be made."

To this, on August 20, the defendants replied, "In reply have to say that we refused to take the cargo of coal per barge Blue-

bird (invoice dated July 20, 1892), to your Mr. Alden, on his visit here July 27, 1892, this being the day the Bluebird arrived at our wharf."

The barge remained in the stream some weeks, until the owners libelled the coal for freight and demurrage in the admiralty court, and the coal was sold under these proceedings to satisfy their claim.

The judge found, as matter of fact, that the coal was not merchantable coal, and ruled that the defendants had a right to reject it on its arrival at New Bedford.

The plaintiffs requested the judge to rule, in case he should find that the coal was not merchantable, that the only remedy the defendants had was by recoupment or reduction in the price to the actual value of the coal. They further requested the judge to rule, that the defendants had no right to refuse to accept the cargo at New Bedford, or to there tender the same back to the plaintiffs; and that in order to revest the title in the plaintiffs it was necessary for the defendants to assign the bill of lading or tender the plaintiffs a release of all interest in or claim to the cargo. But he declined so to rule, and ruled that the defendants had the right to refuse to accept the cargo at New Bedford without tendering back the bill of lading and the invoice, or either of them, and without assigning or transferring to the plaintiffs any interest or legal title in the coal which was or might be in the defendants; and the plaintiffs excepted.

*A. H. Russell*, for the plaintiffs.

*E. L. Barney*, (*E. J. Hadley* with him,) for the defendants.

FIELD, C. J. There was an implied warranty that the coal should be merchantable. *Murchie* v. *Cornell*, 155 Mass. 60. The report recites that the court, trying the case without a jury, found as a fact that the coal was not merchantable, and ruled, against the plaintiffs' objection, that the defendants had the right to reject the coal on its arrival at New Bedford. We think that this ruling was right. *Pope* v. *Allis*, 115 U. S. 363. *Cleveland Rolling Mill* v. *Rhodes*, 121 U. S. 255, 261. *Bryant* v. *Isburgh*, 13 Gray, 607. *Wiley* v. *Athol*, 150 Mass. 426, 434. *Smith* v. *Hale*, 158 Mass. 178. *Grimoldby* v. *Wells*, L. R. 10 C. P. 391. Whether, in such a case as this, the title to the property passes to the

vendee when the coal is delivered on board the barge, is not free from doubt, and we have not found it necessary to decide the question. See *Stanton* v. *Eager*, 16 Pick. 467; *Tyler* v. *Currier*, 13 Gray, 134·; *Claflin* v. *Boston & Lowell Railroad*, 7 Allen, 341; *Gardner* v. *Lane*, 9 Allen, 492; *S. C.* 12 Allen, 39, 48; *Prince* v. *Boston & Lowell Railroad*, 101 Mass. 542; *Merchants' National Bank* v. *Bangs*, 102 Mass. 295; *Odell* v. *Boston & Maine Railroad*, 109 Mass. 50; *Harvey* v. *Harris*, 112 Mass. 32; *Frank* v. *Hoey*, 128 Mass. 263; *Lord* v. *Edwards*, 148 Mass. 476; *Smith* v. *Edwards*, 156 Mass. 221.

If it be assumed in favor of the plaintiffs that the title to this coal passed to the defendants when it was selected by the plaintiffs and laden free on board upon the barge at Weehawken, and when bills of lading were given to the plaintiffs under which the cargo was to be delivered to the defendants or their assigns at the port of New Bedford, they paying the freight, we are yet of opinion that the rulings at the trial were correct. If the title passed to the defendants it was a conditional title, and the condition was that the coal should be found to be of the quality purchased, and the defendants could reject the coal if upon examination it did not conform to the implied warranty that it should be merchantable.

The question is, on the assumption that the title passed to the defendants, whether the defendants did all required of them to revest in the plaintiffs the title to the coal. The report of the presiding justice recites that the plaintiffs requested him to rule that, " in order to revest the title in the plaintiffs it was necessary for the defendants to assign the bill of lading or tender plaintiffs a release of all interest in or claim to the cargo. But I declined so to rule, and ruled that the defendants had the right to refuse to accept the cargo at New Bedford without tendering back the bill of lading and the invoice, or either of them, and without assigning or transferring to the plaintiffs any interest or legal title in the coal which was or might be in the defendants ", and to this ruling the plaintiffs excepted.

The court found that the only bill of lading sent to the defendants was the captain's bill of lading. This bill of lading was marked " Captain's B L." The captain demanded this bill of lading of the defendants, and they delivered it to him, after having made upon it the customary indorsements of the arrival

of the barge ready to discharge, and of its being afterwards towed from their wharf and anchored in the stream. The defendants immediately, upon the arrival of the barge examined the cargo, found it unsatisfactory, and gave notice to the plaintiffs that they refused to receive it. One of the plaintiffs thereupon came to New Bedford, went on board the barge, and examined the coal. The report then states that "Mr. Hart thereupon told Mr. Alden that the cargo of coal was not such coal as they had bought, and that they would not take it, and would not under any circumstances receive it; that it was not merchantable coal, and that they would not have it. Mr. Alden expressed himself that the coal was not of the quality it should have been, nor was it such quality of coal as he had sold him, and it did not correspond to the representation. Mr. Alden said he would try and sell the cargo to other parties, and thereupon called upon other persons and offered to sell the cargo. Mr. Alden afterwards saw the coal several times, inspected and examined the same, visited the coal dealers in Taunton, Attleborough, Brockton, Whitman, places on Cape Cod, and other places, and made various attempts to sell the said cargo, but did not succeed." Ultimately the owners of the barge libelled the coal for freight and demurrage in a court of admiralty, and the coal was sold under proceedings in the admiralty court to satisfy their claim. These facts show that the defendants tendered the cargo of coal to the plaintiffs and, so far as they could, delivered possession of it to the plaintiffs. The cargo was capable of manual delivery, subject to the barge-owners' claim for freight and demurrage. These facts also tend to show that the plaintiffs accepted this tender, and assumed control of the cargo; but whether they did or not, they could have accepted it and acquired possession, subject to the lien of the owners of the barge for freight and demurrage. The defendants retained no bill of lading, and therefore could have indorsed none to a purchaser, and the retention of the invoice is immaterial. Assuming that the title to the coal had passed to the defendants subject to examination and acceptance or rejection by them, we think that everything was done by them necessary to a rescission of the contract. See *Grimoldby* v. *Wells*, L. R. 10 C. P. 391. Whether something less than was done would not have been effectual need not be considered.

*Judgment on the finding.*