STATE *vs.* HENRY B. PETERS.

Kennebec.    Opinion November 17, 1897.

*Sales.    Delivery.    Place.    C. O. D.    Butterine.*

Delivery to the carrier designated by the consignee is a delivery to the consignee, subject to the vendor's lien.

An indictment for the illegal sale of goods in Kennebec county will not be sustained where the evidence of the sale shows that it took place in another county.

A, at Augusta, wrote the company of which the respondent was general manager at Portland, asking for quotation of price of butterine; also, how soon it could be shipped upon receipt of order. The respondent answered giving quotation, and saying, "If we receive your order at once, same will be shipped in car from Chicago Thursday, arriving here (Portland) a week from Monday." Thereupon, A, at Augusta, gave the following order: "You

may ship me via American Express C. O. D. as soon as possible three 40 pound tubs butterine (Lincoln flats colored) same as I have been using at 14 c." The respondent did not answer, but filled the order by delivering the butterine in question to the American Express Co. at Portland, to be sent C. O. D. to A. The American Express Co. delivered the butterine to A. at Augusta.

The state claimed that the respondent's reply to A's letter of inquiry was an offer to sell butterine, and that A's order was an acceptance of the offer, and having been written and mailed at Augusta, the sale was made at Augusta. *Held ;* that respondent's letter was not an offer to sell, but that A's order was an offer to buy, and that it was accepted and the sale completed at Portland by the delivery of the butterine to the American Express Co. as directed.

*Also ;* that this result follows, although the butterine was ordered to be sent and was sent "C O. D. ;" and although the seller, as soon as the butterine was delivered to the consignee, attempted to attach it to secure a prior debt.

*State* v. *Intoxicating Liquors,* 73 Maine, 278, affirmed.

ON EXCEPTIONS BY DEFENDANT.

In this case the respondent was indicted in the Superior Court, Kennebec county, for selling butterine contrary to section 3, c. 128, R. S., prohibiting the sale and manufacture of adulterated butter.

When the case was closed for the state, the respondent submitted his cause without evidence, and seasonably asked the court to instruct the jury that, upon all the facts of the case, the sale alleged in the indictment did not take place in the county of Kennebec, and that it was therefore the duty of the jury to render a verdict of not guilty.. The presiding justice declined to so rule, and a verdict of guilty was thereupon rendered.

The facts appear in the opinion.

*Geo. W. Heselton,* County Attorney, for State.

The jury in this case found that the sale was made in Kennebec county ; and might have so found because of the fact that all the terms of the sale were so complete in this contract that the ownership then and there passed despite of the fact that the goods were to be delivered to an express company as a C. O. D. package.

If the title passed to the vendee when the contract was accepted, then the sale was made in Augusta, and the respondent was liable.

When the shipper reserves any power or authority over the

goods, or exercises any such power or authority other than his lien for payment or right of stoppage in transitu, it is evidence that he reserves the jus disponendi, and that the sale took place at the point of delivery by the common carrier. This is evidence to be taken into consideration by the jury in connection with all the circumstances of the case; and if the jury are satisfied that the shipper did, in fact, reserve the jus disponendi, then as a matter of law the sale takes place at the point of delivery to the purchaser by the common carrier, and the common carrier is the agent of the seller. This is a question of fact for the jury.

*H. M. Heath and C. L. Andrews*; *F. H. Harford*, for defendant.

The indictment is for a sale. A mere contract to sell or an executory agreement for sale would not be a completed offense. It is incumbent upon the government to prove an executed sale.

The contract of sale was completed in Portland. *Jenness* v. *Mt. Hope Iron Co.*, 53 Maine, 20 ; *Cumberland Bone Co.* v. *Atwood Lead Co.*, 63 Maine, 167; *Milliken* v. *Pratt*, 125 Mass. 374; *McIntire* v. *Parks*, 3 Metc. 207 ; *Orcutt* v. *Nelson*, 1 Gray, 536.

Delivery: — *Garbracht* v. *Com.*, 96 Pa. St. 449, (42 Am. Rep. 550) ; *Boothby* v. *Plaisted*, 51 N. H. 436, (12 Am. Rep. 140) ; *Sarbecker* v. *State*, 65 Wis. 171, (56 Am. Rep. 624) ; *Garland* v. *Lane*, 46 N. H. 245; *Woolsey* v. *Bailey*, 27 N. H. 217 ; *State* v. *Hughes*, 22 W. Va. 743; *Pearson* v. *State*, 66 Miss. 510 ; *Brechwald* v. *People*, 21 Ill. App. 214; *Merchant* v. *Chapman*, 4 Allen, 362; *Dolan* v. *Green*, 110 Mass. 322; *Brockway* v. *Maloney*, 102 Mass. 308; *Fly* v. *Webster*, 102 Mass. 304; *Tracy* v. *Webster*, 102 Mass. 307; *Frank* v. *Hoey*, 128 Mass. 264; *Finch* v. *Mansfield*, 97 Mass. 89.

Where the duty of the seller is to send the goods to the buyer, the general rule is that delivery to a common carrier is equivalent to a delivery to the buyer himself, and particularly is this so if the carrier to whom the delivery is made has been designated by the buyer; carrier in that case is deemed the agent of the buyer and not the agent of the seller. Where the seller, however, is to pay the freight, the carrier is the agent of the seller and delivery

is not complete until the goods reach the purchaser. *Berry* v. *Palmer,* 19 Maine, 303; *Torrey* v. *Corliss,* 33 Maine, 333; *Wing* v. *Clark,* 24 Maine, 366; *Banchor* v. *Cilley,* 38 Maine, 553; *Ramsey & Gore Mfg. Co.* v. *Kelsey,* 55 N. J. L. 320, (22 L. R. A. Book 22, page 415, and cases cited in note). Delivery to an agent or to a third person selected by the purchaser is delivery to the purchaser himself. *Johnson* v. *Stoddard,* 100 Mass. 306; *Waldron* v. *Romaine,* 22 N. Y. 368; *Wade* v. *Hamilton,* 30 Ga. 450; *Haug* v. *Gillett,* 14 Kan. 140; *Ranny* v. *Higby,* 5 Wis. 62.

Place of sale:—*Atl. Phos. Co.* v. *Law,* (S. C.) 23 S. E. Rep. 955; *Kline* v. *Baker,* 99 Mass. 253; *Abberger* v. *Marran,* 102 Mass. 70; *Dunn* v. *State,* 82 Ga. 27; *Terrett* v. *Bartlett,* 21 Vt. 184; *Sullivan* v. *Sullivan,* 70 Mich. 583; *Mack* v. *Lee,* 13 R. I. 293; *Dame* v. *Flint,* 64 Vt. 533; *Shriver* v. *Pittsburg,* 66 Pa. 446.

Sales C. O. D.:— *State* v. *Karl,* 43 Ark. 353, (51 Am. Rep. 565); *Com.* v. *Fleming,* 130 Pa. St. 138, (5 L. R. A. 470); *Crook* v. *Cowan,* 64 N. C. 743; *Pilgreen* v. *State,* 71 Ala. 368; *Brechwald* v. *People,* 21 Ill. App. 213; *State* v. *Flanagan,* 38 W. Va. 53, (22 L. R. A. 430 and 45 Am. St. Rep. 838). For cases apparently holding the converse see Book 22, L. R. A. p. 426, where it is suggested that these decisions to the contrary may be partly reconciled by determining who directed the shipment.

Rule in Maine:— *Barry* v. *Palmer,* 19 Maine, 303; *Wing* v. *Clark,* 24 Maine, 366; *Torrey* v. *Corliss,* 33 Maine, 333; *Banchor* v. *Cilley,* 38 Maine, 553; *White* v. *Harvey,* 85 Maine, 214; *State* v. *Intoxicating Liquors,* 73 Maine, 278.

SITTING: EMERY, FOSTER, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

SAVAGE, J. The only question presented by the exceptions in this case is whether, upon all the facts in the case, the sale of butterine alleged in the indictment did or did not take place in the county of Kennebec.

From the undisputed facts it appears that on December 14, 1896, one McLaughlin, then residing in Augusta, wrote to the

Portland Beef Company, of which concern the respondent was manager, the following letter :—

"Old Orchard, Me. Dec. 14th, 1896.

Portland Beef Co.

    Gentlemen.

Quote me price of Butterine, the same I have used the past two seasons (Lincoln flats colored). Upon receipt of order how soon can you ship me three (3) tubs, C. O. D. American Express? An early reply will oblige,

Respy yours,

C. E. McLaughlin."

The respondent on the same day answered as follows :—

"Portland, Me. Dec. 14th 1896.

Mr. C. E. McLaughlin, Old Orchard,

    Dear Sir :

Replying to your letter of Dec. 14th, quote you 3 40 lb tubs butterine 14 c. If we receive your order at once same will be shipped in car from Chicago Thursday, arriving here a week from Monday.

Yours respectfully,

H. B. Peters."

On the following day, McLaughlin wrote this letter to the Portland Beef Company :—

"Old Orchard, Me. Dec. 15th, 1896.

Portland Beef Co.

    Gentlemen,

You may ship me via American Express, C. O. D., as soon as possible 3 40 pound tubs Butterine (Lincoln flats colored), same as I have been using, at 14 c.

Very Resp'y,

C. E. McLaughlin,

Old Orchard."

Although McLaughlin's letters were dated "Old Orchard" for reasons of his own, they were in fact written and mailed at Augusta. To the last letter the respondent made no reply, but on

December 24, 1896, he delivered the three tubs of butterine ordered to the American Express Company at Portland, to be sent C. O. D. to McLaughlin at Old Orchard. Subsequently by direction of McLaughlin, with the consent of the respondent, the butterine in question was reshipped from Old Orchard to Augusta by the express company, and there delivered to McLaughlin upon payment of the price and the transportation charges.

It is contended on the part of the state that these transactions constituted a sale of the butterine at Augusta. It is strenuously claimed that the respondent's letter of December 14 was an offer or proposal to sell McLaughlin three forty-pound tubs of butterine at fourteen cents a pound, and that McLaughlin's letter of December 15, written and mailed at Augusta, was an acceptance of that offer. Hence it is argued that the sale was made at Augusta.

If the state is right in its premises, it is also right in its conclusion. If we regard the respondent's letter as an offer, the acceptance of that offer completed the trade, accomplished the sale, struck the bargain, and in accordance with well-settled principles of law, such a sale would be deemed to have been made at Augusta, the place where the offer was accepted.

But the trouble with the position of the state is, that the respondent's letter of December 14 cannot be considered as an offer or proposal. It was simply an answer to McLaughlin's letter of inquiry of the same date. McLaughlin asked for a quotation of prices, and how soon the butterine could be shipped on receipt of an order. The respondent gave the desired information, nothing more. The most that can be said is that it contemplated a possible offer by McLaughlin to buy, if the price and time of delivery were satisfactory. If after this, the respondent had refused to fill McLaughlin's order of December 15, he could not have been held liable for a breach of contract to sell. The letter of the respondent contained no undertaking whatever to sell. *Howard* v. *Maine Industrial School*, 78 Maine, 230; *Smith* v. *Gowdy*, 8 Allen, 566.

In McLaughlin's letter of December 15, we find the first offer. It was an order, an offer to buy. His proposition to buy was accepted by the respondent, by delivering the butterine ordered to

the carrier designated by the consignee.  This constituted the sale.
The delivery was at Portland, and not at Augusta.

But the state contends that, taking the transaction as a whole, it
is evident that the vendor did not intend to part with the title to
the butterine, until it was paid for by the consignee to the carrier;
that from the fact that the butterine was shipped "C. O. D.",
which means to "deliver upon payment of the charges due the
seller for the price, and the carrier for the carriage of the goods,"
*State* v. *Intoxicating Liquors,* 73 Maine, 278, the jury would be
authorized to find that the vendor reserved the jus disponendi until
payment.  And authorities to this effect are cited.  But such is
not the law in this state, in the absence of controlling circum-
stances; and there was nothing in the order, or in the acceptance
and the shipment of the butterine in this case, to take it out of the
general rule touching the shipment of goods on order C. O. D.
The delivery to the carrier designated by the consignee was a
delivery to the consignee, subject to the vendor's lien.  The lan-
guage of Mr. Chief Justice PETERS in *State* v. *Intoxicating Liquors,*
supra, is full and expressive upon this point:  "The contract stands
upon the simple rule of the common law.  The seller was entitled
to his price, and the buyer to his property as concurrent acts.
The title passed to the vendee when the bargain was struck.  Any
loss of the property by accident would have been his loss.  The
vendor had a lien on the goods for his price.  The vendor could
sue for the price, and the vendee upon a tender of the price, could
sue for the property."  We adhere to this rule.

It further appears that after the butterine was shipped, the Port-
land Beef Company, represented by the respondent, attempted to
attach it at Old Orchard, and did attach it at Augusta, after
McLaughlin had paid the C. O. D. bill, to secure an old debt due
from McLaughlin.  From the evidence it is claimed that an infer-
ence may be legitimately drawn, and that the jury were author-
ized to find, that it was not the intention of the respondent to part
with the title until the butterine was paid for; that the respondent
shadowed the goods so that they could be attached as soon as they
became the property of McLaughlin by payment.  We think

otherwise.   The acts of the respondent in the attempt to secure the old bill show rather an intention to attach as soon as the vendor's lien was removed by payment.   It would have been fruitless to attach before.

There is no evidence in the case which would warrant the jury in finding that the sale of the butterine took place at Augusta. The jury should have been so instructed, as requested by the respondent, in substance.   The presiding judge declined to so instruct, and the jury were permitted to find that the sale did in fact take place in Augusta, a finding which had no evidence to support it.

*Exceptions sustained.*