## STEVENS v. STATE OF OHIO.

### (Circuit Court, N. D. Ohio, E. D. May 5, 1899.)

### No. 5,893.

INTERSTATE COMMERCE—INTOXICATING LIQUORS—EFFECT OF WILSON ACT.

An agent of a West Virginia brewing company took an order for a keg of beer, to be delivered at the residence of the purchaser in Ohio, at which place the order was taken. The beer was shipped to a near-by railroad station, the keg having a card attached, on which was written the name of the purchaser, though it did not appear to whom it was billed. It was received, however, by another agent of the company, who conveyed it to the residence of the purchaser, and there delivered it, the selling agent afterwards collecting the price. *Held*, that the transaction was a sale in Ohio, having no relation to interstate commerce; that, on the arrival of the beer at the station, and its delivery to the agent of the brewing company, the interstate shipment terminated, and the beer had "arrived within the state," within the meaning of the Wilson act (26 Stat. 313, c. 728), and was thereafter subject to the operation of the state laws regulating its sale; that, so far as any question of interstate commerce was concerned, it was immaterial whether the sale was made before or after such arrival.

On Application by Emil Stevens for a Writ of Habeas Corpus.

J. B. Handlan, for plaintiff.
Addison C. Lewis, for the State of Ohio.

RICKS, District Judge. The following is the agreed statement of facts:

"In the matter of the indictment of said defendant in said court for unlawfully selling intoxicating liquor as a beverage to one Richard Roe, in the township of Mt. Pleasant, a prohibition township, in the county of Jefferson, and state of Ohio, and without the limits of a municipal corporation, on the 17th day of December, 1898, counsel for the state, as well as the defendant and his counsel, admit and agree that the following statement shall constitute, and actually are, the material facts in this case: That said Emil Stevens, at the time and place so charged in the indictment, was a citizen of the United States, and a resident of the state of Ohio, and was the agent of a brewing company, which company was engaged in the manufacture of beer from the raw material, and the sale thereof, and whose manufactory and office were situate in the city of Wheeling, county of Ohio, and state of West Virginia. That under his authority as such agent said defendant, on the ——— day of December, 1898, in said township, and without the limits of a municipal corporation, entered into an oral contract with one Richard Roe, by the conditions of which contract the said brewing company, in consideration of the sum of $1.10, was to deliver to said Roe, at his residence in said township, in the state of Ohio, and without the limits of a municipal corporation, free of charge, certain intoxicating liquor, viz. one wooden keg, containing beer, and being one-eighth of a barrel, and holding four gallons of said beer, the product of said brewery, said consideration to be paid to said agent as such in said township after the delivery of said beer as aforesaid, and the keg, when emptied, to be returned at the residence of said Roe to another agent of said brewing company, as the property of said company, said other agent being then and there in the employment of said company for hauling and delivering its beer from the railroad station in said township to the residences therein of the various purchasers, and for collecting the empty kegs and shipping them back to said company at Wheeling, West Virginia. That in pursuance of said contract the said defendant, Emil Stevens, as said agent of said brewing company, filled in an order blank in writing (used by him for reporting such contracts to his said principal) for said one-eighth of a barrel of beer, to be de-

livered to said Richard Roe, as aforesaid, and sent said order blank so filled in to his (the said defendant's) principal, at Wheeling, in the state of West Virginia. That upon the receipt of the said order blank so filled in the said brewing company, at its manufactory, consigned one-eighth of a barrel of beer to said Richard Roe, with the name of said Richard Roe on said barrel upon a card tacked on said one-eighth barrel; and said one-eighth barrel was, on or about the 17th day of December, 1898, shipped by said company from its brewery in Wheeling, in the state of West Virginia, via the Wheeling & Lake Erie Railroad, a common carrier, to a station on said railroad, and within said township, in the state of Ohio, and from said station was thence taken by said brewing ·company by its said other employé, and delivered to said Roe at his said residence in said township, and without the limits of any municipal corporation; and thereafter (but not at the time of said delivery of said beer), in said township, said Roe paid to said Stevens, as agent of said company, the purchase price, viz. $1.10, and said other agent of said company called for the empty keg at said Roe's said residence, and returned it to said railroad station for shipment back to said company at Wheeling, West Virginia. That said defendant, Stevens, thereafter accounted to his principal as its agent for said purchase money received by him as aforesaid, to wit, $1.10, and paid the same accordingly to the said brewing company at Wheeling, West Virginia; that in consideration of the defendant's services rendered to his principal in this and similar transactions, as aforesaid, the defendant received from the said brewing company the sum of $15.00 per week, and that defendant received no compensation other than his said weekly salary. That said company paid the freight, and delivered said keg of beer in the manner aforesaid without charge, except the purchase price paid as aforesaid. That said keg of beer was delivered as aforesaid without change in its original form as it left the brewery. That at the time said keg of beer was sold to said Richard Roe, as aforesaid, and for more than thirty days prior to the making of said contract therefor, said township of Mt. Pleasant was a local option or prohibition township in which the sale of intoxicating liquors, other than cider, or wine manufactured from the pure juice of the grape, cultivated in this state, was forbidden and unlawful under the laws of the said state of Ohio. That said defendant then and there was not a legally registered druggist, and that said beer was sold to said Richard Roe, as aforesaid, to be used as a beverage, and not for exclusively known medicinal, art, scientific, mechanical, or sacramental purposes. It is further agreed by the defendant and his counsel and counsel for the state that this action shall be tried to and by said court without the intervention of a jury upon the foregoing statement of facts, and that said court shall determine the question of defendant's guilt or innocence of said charge, and pass judgment accordingly."

Upon this agreement a jury was waived, and the alleged offense was tried before the court of common pleas of Jefferson county, Ohio, for a violation of what is known as the "Local Option Law" of Ohio. The defendant was found guilty, and was adjudged to be imprisoned in the Stark county workhouse for a period of 20 days from and including March 6, 1899, and to pay a fine of $500, and stand committed until the fine and costs should be paid. The question to be decided is whether, in view of the act of congress of August 8, 1890 (26 Stat. 313, c. 728), known as the "Wilson Law," the prohibition laws of the state of Ohio apply so as to give effect to the prohibitory or local option laws of the state, or whether the local option law is in conflict with subdivision 3, § 8, art. 1, of the federal constitution. The local option law of Ohio (85 Ohio Laws, p. 55) reads as follows:

"An act to further provide against the evils resulting from the traffic in intoxicating liquors, by local option in any township in the state of Ohio, passed March 3, 1888.

"Section 1. Be it enacted," etc., "that whenever one-fourth of the qualified electors of any township, residing outside of any municipal incorporation,

shall petition the trustees therefor for the privilege to determine by ballot whether the sale, of intoxicating liquors as a beverage shall be prohibited within the limits of such township, and without the limits of any such municipal incorporation, such trustees shall order a special election for the purpose, to be held at the usual place or places for holding township elections; and notice shall be given and the election conducted in all respects as provided by law for the election of township trustees; and only those electors shall be entitled to vote at such election who reside within the township and without the limits of such municipal incorporation. A record of the result of such election shall be kept by the township clerk in the record of proceedings of township trustees; and in all trials for violation of this act, the original entry of said record, or a copy thereof certified by the township clerk, provided that it shows or states that a majority was against the sale, shall be prima facie evidence that the selling, furnishing, giving away or keeping a place, if it took place from and after thirty days from the day of the holding of said election, was then and there prohibited and unlawful.

"Sec. 2. Persons voting at any election held under the provisions of this act, who are opposed to the sale of intoxicating liquors as a beverage, shall have written or printed on their ballots, 'Against the sale;' and those who favor the sale of such liquors shall have written or printed on their ballots, 'For the sale;' and if a majority of the votes cast at such election shall be 'Against the sale,' then from and after thirty days from the day of the holding of said election, it shall be unlawful for any person within the limits of such township and without the limits of such municipal corporation to sell, furnish or give away any intoxicating liquors to be used as a beverage, or to keep a place where such liquors are kept for sale, given away or furnished; and whoever sells, furnishes or gives away any intoxicating liquors as a beverage, or keeps a place where such liquors are kept for sale, given away or furnished, shall be fined not more than five hundred dollars, nor less than fifty dollars, and be imprisoned in the county jail not exceeding six months; but nothing in this section shall be construed so as to prevent the manufacture and sale of cider, or sale of wine manufactured from the pure juice of the grape, cultivated in this state, nor to prevent a legally registered druggist from selling or furnishing pure wines or liquors for exclusively known medicinal, art, scientific, mechanical, or sacramental purposes; but this provision shall not be construed to authorize the keeping of a place where wine, cider or other intoxicating liquors are sold, kept for sale, furnished or given away as a beverage.

"Sec. 3. In indictments for violations of this act, it shall not be necessary to set forth the facts showing that the township has availed itself of the provisions of this act, but it shall be sufficient to plead simply that said selling, furnishing, giving away or keeping a place was then and there prohibited and unlawful."

The Wilson act reads as follows:

"That all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

A full consideration of the questions presented in this case leads to the conclusion that the court should be governed by the decision in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, in which it was held:

"The act of August 8, 1890 (26 Stat. 313, c. 728), enacting 'that all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not

be exempt therefrom by reason of being introduced therein in original pack-
ages or otherwise,' is a valid and constitutional exercise of the legislative
power conferred upon congress; and, after that act took effect, such liquors
or liquids, introduced into a state or territory from another state, whether in
original packages or otherwise, became subject to the operation of such of
its then existing laws as had been properly enacted in the exercise of its
police powers; among which was the statute in question as applied to the
petitioner's offense."

It is claimed that this decision is modified by the case of Rhodes
v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, in which it was held that sec-
tion 1553 of the Code of Iowa, prohibiting express companies, rail-
way companies, or other persons from transporting or conveying
intoxicating liquors from one place to another within the state, can-
not be held to apply to a box of spirituous liquors shipped by rail
from a point in Illinois to a citizen of Iowa, at his residence in that
state, while in transit from its point of shipment to its delivery to the
consignee, without causing the Iowa law to be repugnant to the con-
stitution of the United States.   In other words, the Wilson act was
not intended to and did not cause the power of the state to attach
to an interstate commerce shipment while the merchandise was in
transit under such shipment, and until its arrival at the point of
destination and delivery to the consignee.   The decision in the Rhodes
Case was wholly a question of transportation and of interstate ship-
ment, in which the meaning of the phrase, "upon arrival in such
state or territory," was construed, and not for determining whether,
the Wilson law being applied, it would give to the statutes of Iowa
extraterritorial operation, and so prevent the sale by a citizen of
one state to a citizen of another.   In the Rahrer Case, Maynard, Hop-
kins & Co., of Missouri, shipped to their agent, Rahrer, at Topeka,
Kan., a car load of liquor in original packages, which was taken charge
of by Rahrer as the agent of the shipper, and by him offered for sale
and sold in the original packages; and the court held that such
liquors became subject to the operation of such of the then existing
laws of Kansas as had been properly enacted in the exercise of its
police powers.   What, if anything, distinguishes the facts in the
Rahrer Case from those in this case?   In both cases the sale was
made by the agent of the foreign merchant within the territory in
which such sales were prohibited.   In the Rahrer Case the liquor
was shipped into the state before the sales were made, and at once
became subject to the laws of Kansas.   In the case under considera-
tion the brewing company set up an establishment within the pro-
hibition territory.   It had there a local agent for selling the liquor,
and another agent, with horse and wagon, to deliver the goods to
customers residing within the township.  · Orders from customers
were first taken, and the supply was procured from the brewery aft-
erwards.   In the Rahrer Case the beer was distributed from a stor-
age room, and in this case it was distributed from the railway station.
By the terms of the sale in this case the goods were to be actually
delivered at the residence of the purchaser before there was a trans-
fer of property or title.   The brewing company paid all the freight,
and undertook to deliver at the residence, and these facts, together
with the circumstances of the transaction, clearly show that the place

of sale was within the prohibition township, and not in Virginia. In short, the company did business just as a resident of the township might do, who simply secured orders from local customers, and thereafter ordered his supply from the brewers to fill such orders. It is claimed, however, that this view of the case would forbid the sale by the brewing company in Wheeling to a customer in Ohio; but we must take the actual transaction, together with all the facts and circumstances, into consideration. While the agreed statement of facts shows that the brewing company, "at its manufactory, consigned one-eighth of a barrel of beer to said Richard Roe, with the name of said Richard Roe on said barrel upon a card tacked on said barrel," the fact is, as shown, that it was shipped to "a station in Mount Pleasant township," and there received and taken in charge, not by Richard Roe, but by the local distributing agent of the brewing company; and it was in the possession and under the control of the seller from the time of its arrival at the station until it was delivered at the residence of the purchaser. These latter facts, it seems to me, take away the elements of interstate commerce from the transaction, and that the putting of the label on the keg, and the shipment from the brewery, was a device to evade the state law. It does not appear from the statement that the card contained the name of the station, so that the package would be sent to the right place if intended for Roe, or whether this keg, with others like it, was included in a waybill covering the lot. While the keg was nominally consigned to Roe, it was in fact consigned to the brewers and their agents at the railway station. On its arrival at the station, and in the possession of the agent, it had "arrived" within the state of Ohio, and within the prohibition territory, and the prohibition laws of Ohio thereupon attached and operated upon it by virtue of the Wilson act. Surely, a shipment from the company at Wheeling, W. Va., to its agent at the station in Mt. Pleasant township, in Ohio, was in no sense an interstate transaction, within the contemplation of the law; but, up to that point, it was a transaction in which only the seller was concerned,—a shipment from the brewing company to the brewing company,—by which continuous possession and ownership was retained in the company until the time of its "arrival" at the station in Ohio, when the local option law applied. It follows that the petitioner is not entitled to be discharged, and his petition is dismissed.