## No. 13,935.

### STATE OF LOUISIANA vs. J. E. McADAMS, ET AL.

#### SYLLABUS.

1. The issuing of a State license to a person as a wholesale and retail liquor dealer does not authorize him to retail alcoholic liquors without a parish license in a parish where such a license is required, as a condition precedent to making such sales therein.

2. The Appellate Court will accept as correct the ultimate conclusions of fact as to the *venue* of the crime charged and the guilt of the party accused, which the district judge, who decided a criminal case, reached from the consideration of the entire testimony on the trial. It cannot go behind them and review them in order to test their correctness. (State vs. Clifford, 45 Ann. 983; State vs. Kennon, 45 Ann. 1193.)

3. It is only through testimony adduced that it can be ascertained whether orders sent by an agent in DeSoto Parish to his principal, a merchant in Caddo Parish, to forward goods by express to certain parties in DeSoto, price payable C. O. D., evidence merely "offers to buy" made by the parties in DeSoto, or whether the orders are sent on for the carrying into execution by the principal of absolute sales of goods by the agent in DeSoto to the parties there.

4. In order that a party should be guilty of retailing alcoholic liquors in a particular parish without a license from the parochial authorities of that parish, it is not essential that he should be actually present in that parish at the time of the sales. He may be constructively present.

A PPEAL from the Twelfth Judicial District, Parish of DeSoto.— Lee, J.

*Walter Guion,* Attorney General, and *Amos L. Ponder,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Alexander & Wilkinson,* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J.   J. E. McAdams, Jack Rachal and ——————Fleming were indicted in the Parish of DeSoto, charging that they, on the 5th of January, 1901, at and in the Parish of DeSoto, unlawfully did keep a grog and tippling shop and retail spirituous liquors without previously obtaining a license so to do from the police jury of DeSoto Parish, and other authorities having the power to issue licenses, contrary to the form of the statutes of Louisiana and against the peace and dignity of the same.

The defendants excepted to the jurisdiction of the court for DeSoto Parish *ratione materiae and rationae personnae,* assigning as a reason that "they nor either of them are residents of said parish, being domiciled in the Parish of Caddo, where their place of business is located, and for the further reason that neither of them have ever been in said Parish of DeSoto, nor were either of them present when said offense was alleged to have been committed in the Parish of Caddo." Under reservation of this exception they further excepted that the laws upon which the prosecution was based did not confer jurisdiction on that court to give it any right or authority to proceed against them in manner and form as attempted, and such proceedings and indictment resulted from an erroneous and illegal construction of said statute and the law in such cases.

They further excepted and pleaded that they, and each of them, had paid their State and parish and municipal licenses in the Parish of Caddo, City of Shreveport and State of Louisiana, as wholesale and retail liquor dealers, and the said State was without any right and the court was without jurisdiction or right to proceed against them as attempted, and same was an attempt to deprive them, and each of them, without adequate compensation previously made, and without due process of law, of their right to pursue their business, as authorized, and of their property, thereby denying them the equal protection

of the law in contravention to Article 2 of the Constitution of the State of Louisiana, and of the 14th amendment of the Constitution of the United States.

These exceptions were, by the court, referred to the merits without prejudice.

The case was tried before the district judge, who found the defendants guilty, and imposed upon each a fine of three hundred and fifty dollars ($350.00), and, in default of payment of same, to four months' imprisonment in jail.

Before sentence, defendants applied for a new trial on the ground that the finding by the court that the defendants were guilty as charged, was contrary to the law and the evidence. The court overruled the application and defendants reserved a bill of exceptions to said action, and they then appealed.

The following bill of exceptions had been reserved and filed by the defendants:

"Be it remembered, that in the above case the defendants, before pleading to the indictment or making any other appearance in said cause, filed therein a written and special plea to the jurisdiction of said court *ratione personae et materiae,* to which special reference is made in amplification hereof, which plea and exception was, by the court on Febry. 25th, 1901, on motion of the district attorney, referred to the merits of said cause without prejudice to the rights of defendants thereunder, and defendants were ordered to plead to said indictment, and thereupon waived arraignment, and plead not guilty to said charge in said indictment preferred. That on evidence then and there adduced, said trial being then proceeded with, the said court took said cause under advisement until Saturday, March 2nd, 1901. That on said day the said court rendered its decision in said cause, overruling said plea to the jurisdiction of said court *ratione personae et materiae,* heretofore referred to, and holding said defendants guilty as charged in said indictment, to which ruling of said court in overruling said plea to the jurisdiction of said courts defendants then and there duly excepted, and to the ruling of said court holding that defendants had retailed spirituous or intoxicating liquors in said Parish of DeSoto without a license, and in holding that the payment by defendants of a license to the City of Shreveport, Parish of Caddo, and to the State of Louisiana, did not authorize them, or either of

them, to make sales in said Parish of DeSoto in the manner and form as set forth in the evidence adduced on the trial of said cause, defendants then and there excepted, a copy of which evidence is hereto annexed and made part of this bill of exceptions for the purpose of showing:

That the sales complained of were made in the Parish of Caddo, said State, and without the territorial limits of the jurisdiction of said court.

That defendant, J. E. McAdams, as principal, had paid and was regularly licensed by the City of Shreveport, and the State of Louisiana, the Parish of Caddo not requiring a license, to engage in the business of a retail liquor dealer, and that under said license said sales were made, and that no court had jurisdicton to ignore such license in the manner and form attempted.

That said license by said McAdams fully protected him in such sales, and likewise protected his drummers or solicitor, defendant Fleming.

That under said evidence no crime or offense was committed by either of said defendants, and the ruling of said court holding them guilty of said offense was illegal and resulted from a misconstruction of said statute, under which said indictment was preferred. For all of these reasons defendants duly excepted to the ruling of said court at the time of the said rulings herein complained of and tender this their bill of exceptions.

By the Court: The accused resides in Shreveport and pays a retail license to do business in the Parish of Caddo. The accused hired salesmen to solicit and take orders for the sale of whiskey in DeSoto (admitted without license in this parish).

There are no accessaries before or after the fact to misdemeanors, therefore, if the agents so sent out are guilty, the principals so employing them are guilty. The acts of the agents, acting in the scope of their authority, bind the principal. To determine the violation of local option law "vel non" we must first find what was the intention of the parties (accused) when they employed agents to come into the prohibited district and make sales. They sold promiscuously to all persons, a preponderance being in favor of negroes. The goods were agreed on, the price agreed on, and the whiskey was to be shipped C. O. D. It is true that the jurisprudence of the other States is somewhat divided on the question of shipments C. O. D., but the testimony

shows so conclusively to my mind that the intent of the parties was to consummate the sale at the time the agent took the order, and that was the intention of the party sending out said agent, that I had no option except to convict.

Nearly one thousand packages sent out in less than two months to parties that the principals never knew or heard of until the orders were received from their agent, convince my mind that there was a subterfuge and evasion resorted to to bring the enforcement of the law into disrepute. The sale and price was agreed to here and the goods shipped C. O. D. to prevent loss by the shipper, and it could never be contended that the principal would ship whiskey to men, "negroes and whites, that they had never heard of unless they ratified the acts of the agents and relied upon *their sales so made."*

Could a dealer in an incorporated ciy allowing whiskey to be sold, send agents in the wards which were prohibition and make sales and agree on the price, subject to payment when delivered, and then take a wagon and deliver the same, and collect the money for the same?

The intention of the parties is further shown by the fact that some of them were present themselves and took orders, and their agents delivered by written orders packages that were sent to various parties, to other parties who did not order the same, and the principals accepted the same and thereby ratified their acts, even if the agents were acting beyond the scope of authority, which I do not think they were.

At last the intention governs, and common sense and reason must decide the issue.

Which bill of exception was duly read, signed and filed in open court, on this March 2nd, 1901.                              J. B. Lee,

Filed March 2nd, 1901.                    *Judge 12th Dist. of La.*

    L. II. Bell, Jr., *Dy. Clerk.*

We find in the transcript just after the bill of exceptions the following words:

*Note.*—For evidence referred to in the foregoing bill of exceptions see stenographer's notes accompanying this transcript.

Section 910 of the Revised Statutes declares that "whoever shall keep a grog or tippling shop, or retail spirituous liquors without previously obtaining a license from the police jury, town or city authorities, on conviction shall be fined not less than one hundred nor more

than five hundred dollars, and in default of payment shall be impri~-
oned not less than fifteen days nor more than four months."

The statute is a State law enacted in aid of the enforcement of the
ordinances of police juries requiring for the purposes of the sale,
specially of liquors, that parties selling liquors should have acted
under the authority of a license so to do.

The District Court basing its decision on evidence as to the facts
of the case held that the defendants had violated the law, found them
guilty and sentenced each of them to pay three hundred and fifty
dollars, and in default of payment, to an imprisonment of four
months.

The defendants appealed and the case comes before us upon two bills
of exception. The first bill of exception was to the refusal of the
District Court to grant a new trial upon the averment that the judg-
ment was contrary to the law and the evidence. The district judge
states at the foot of the bill that he was convinced that the conviction
was in accordance with law and justice.

The second bill of exception we have copied in full. In it the
defendant declared that he annexed to and made part of the bill the
evidence taken at the trial of the cause, for the purpose of showing
that the sales complained of were made in the Parish of Caddo and
without the territorial limits of the jurisdiction of the court. We
find attached to the transcript the evidence as taken down by the
stenographer.

It is conceded by the State that the defendant, McAdams, had a
place of business in Shreveport, Parish of Caddo, and that he sold
liquors under a retail license for the Parish of Caddo issued by the City
Council of the City of Shreveport and by the State of Louisiana.

The defendant concedes that he has no retail nor whosesale license
issued from the Parish of DeSoto; that he sent out a solicitor to take
orders for whiskey ranging in quantity from one quart to any amount
less than five gallons, and that the solicitor took orders from any and all
people. That the price was agreed upon between the solicitor and
the purchaser and that the whiskey was delivered to a common carrier
to be delivered to the purchaser C. O. D.

Our inquiry in this case is limited to sales of spirituous liquors and
to such sales viewed from the standpoint of the criminal laws of the
State. No demand is made upon the defendant for a license, nor are
any property rights involved in the case. The defendant, if we under-

stand clearly his position, claims that the license as a retail liquor dealer which he obtained from the State and from the Common Council authorized him to make retail sales of liquor in any parish of the State without reference to whether the ordinances of the police juries of the different parishes made the obtaining of a license from them to make such sales therein a condition precedent to their making that character of sales. The right of the defendant under the authority of his license to make within the Parish of Caddo retail sales of liquor to parties living or being outside of the State and to cause the property sold in Caddo to be delivered by carriers to the purchasers at their places of residence, even if the purchasers lived in parishes where a parish license to sell in those parishes is made a condition precedent to liquor being sold there, is not at issue in this case.

If the sales made by the defendant were sales made by him in the Parish of Caddo, defendant would be guilty of no violation of law.

If they were not made in the Parish of Caddo, but were made in the Parish of DeSoto, where a license is exacted by the police jury as a condition precedent to sales of that character being made, then he was guilty of the misdemeanor charged in the indictment.

A license from the State to a person as a retail liquor dealer is granted subject to the qualification attached thereto as to its scope by the provisions of Section 910 of the Revised Statutes. That section must be read into the license, otherwise the statute would be a dead letter. It would be utterly inconsistent to make the retail selling by a person of spirituous liquors in a parish without the consent of the police jury a misdemeanor and punishable by fine or imprisonment, and yet protect a person making such sales under a license to sell granted to him by the State in another parish. From the operation of the State's license to sell are necessarily excepted sales to be made without a license in a parish where such licenses are required. We are limited in this case to decisions of questions of law.

In the second bill of exceptions sent up with the record the district judge recited a certain state of facts as having been proved by the testimony and held under that state of facts as a matter of law, that defendant had made in DeSoto sales of liquor without the license of the police jury of the Parish of DeSoto. Is this court authorized to look into the whole testimony taken down by the stenographer and declare that conclusions of fact, the facts in the case, were not such as they were declared to be by the District Court? We think not. (43

Ann. 205; 45 Ann. 983; 52 Ann. 2061; 104 La. 65, 165.) The utmost that we could do would be to examine and declare whether the conclusion of law drawn by the judge from the ultimate facts as stated by him, was a correct legal conclusion. The facts found by the court are that "the accused resides in Shreveport and pays a retail license to do business in the Parish of Caddo. The accused hired salesmen to solicit and take orders for the sale of whiskey in DeSoto (admitted without a license in this parish). What was the intention of the accused when he employed agents to come into the prohibited district and make sales? They sold promiscuously to all persons, a preponderance being of negroes. The goods and price were agreed on and the whiskey was to be shipped C. O. D. Nearly one thousand packages were sent out in less than two months to parties that the principals never knew or heard of until the orders were received. The sale and price were agreed to here to prevent loss by the shipper."

We are of the opinion that under the state of facts found by the court, it could well find that the defendant, McAdams, had made retail sales of intoxicating liquors in the Parish of DeSoto without a license from the police jury thereof. Under such circumstances, the defendant, McAdams, violated Section 910 of the Revised Statutes and he was legally found guilty and sentenced. There was no necessity for him to have been actually present in person in DeSoto Parish in order that he should have made such sales. If he sent an agent to DeSoto Parish "to take orders there from prospective purchasers" of spirituous liquors at retail with the duty of "forwarding the orders, to be by himself filed at Shreveport, and if in obedience to these instructions his agent did take such orders there, the goods being then and there agreed on and the price fixed, and forwarded them to Shreveport, to be there filled by McAdams, and sent forward by express, to be delivered in DeSoto Parish," "the express company collecting the price and freight charges at the point of delivery," and if McAdams on receiving these orders did fill the same and forward the liquor by express to DeSoto Parish, to be there delivered C. O. D., we cannot say that the court erred as a matter of law in holding that sales had been made by McAdams in DeSoto Parish through his agent.

It was obviously understood and agreed upon between all parties that the sales should be made in DeSoto. Everything connected with the sales was done or to be done there except the mere act of filling the jugs or bottles and sending them forward by the express company.

The goods and the price thereof were fixed there between the agent and the party buying; the price was to be paid in DeSoto Parish, but only upon the delivery of the liquors, and the liquors were to be delivered there, but only upon the payment of the price.

The district judge might well hold that the claim that the orders were sent to Shreveport, to be there accepted or rejected by McAdams, was a mere colorable pretext and device resorted to to evade the State law.

The character and quantity of the things sold—the trival price involved in the orders—the promiscuous taking of the orders from parties unknown to the agent himself and without regard to character and position, tended to show that these orders when sent forward were sent forward for execution and not for approval or rejection. An order sent to a retail liquor dealer in Shreveport by his agent in DeSoto to forward by express to DeSoto a half gallon of whiskey to a party named, for a designated price, to be delivered there on payment of the price and the freight, leaves very little occasion for the exercise by the liquor dealer of a right of acceptance or rejection. It is the right of courts where pretensions of this kind are set up by parties, manifestly advanced to cover violations of State law, (pretentions which if recognized would render the law practically a dead letter), to test the same, as the district judge declares he did in this case, by applying to them the rules of reason, common sense and common experience.

It is a matter of general knowledge that the parties whom the merchants or dealers in cities send out into the country known by the name of drummers, are provided in advance with price lists of the different articles which their houses have for sale, with authority to offer them for sale at those prices. It by no means follows as a presumption of law from the fact that an order should have been sent to a merchant in a city to forward by express to a particular person in the country a certain article at a designated price, deliverable to the person named, on his paying the price and freight, that the order represents an "offer to buy" on the part of the person to whom the articles are directed to be sent. Such order may, on the contrary, follow an acceptance by the party named of an authorized "offer to sell," which had been made at his home by the drummer of the house, and which had been then and there accepted. If after the defendant's agent, acting under his authorization to "offer his liquors for sale" in DeSoto

at a certain designated price, had done so and this offer had been accepted by parties in DeSoto, an order should have been transmitted to the plaintiff in Shreveport to forward the articles to DeSoto by express, to be delivered there on payment of the price and the freight, we scarcely think it could be claimed as a matter of law that the articles had been sold in Shreveport. If the parties who dealt with defendant's agent in DeSoto had been informed after an agreement had been reached between them as to the kind and quantity of liquor they wanted, and after the price for this same had been fixed, that the orders had been sent to Shreveport for approval or rejection and not for the purpose of being filled—we think they would have had reason to be surprised.

In Erman & Cahn vs. Lehmann (reported 47th An. 1655), where the issue between the parties was whether or not a certain contract of sale of goods had been made in Louisiana or not, this court said: "When the interview between Lehmann and these parties terminated, the situation was not that of parties waiting to see 'whether or not propositions for purchases which were to be sent forward would be accepted or not by principals residing in other States, and depending upon the action of these persons in order to determine whether contracts would be made or not, but of parties who had then and there made and completed contracts of sale, the one as a purchaser, the other claiming to be authorized by their principals to make presently concluded sales, and so making them Lehmann did not deal with the representatives for these houses as solicitors for them forwarding orders for acceptance or rejection, but as agents of those houses making present sales for them and forwarding orders, not for acceptance or rejection, but in execution of concluded sales. The orders sent forward were sent solely because the articles which were the object of the sales were in other States and required shipment. Had they been in New Orleans at the time of the interviews they would have been called for there at once by Lehmann. Under the evidence in the record, there would have been no necessity for any communication between the agents and their principals to justify the former in making a delivery. * * * We think they had ample authority to act as they did in making the sales, but were we to assume that they had transcended their authority or disobeyed secret instructions in so doing, it would by no means' follow when their principals (called on to take action in regard to their New Orleans dealers) should approve them, that the contracts

are to be made as contracts of the place of residence of the principals. On the contrary, the act of affirmance being of a sale made by the agent as one *in presenti,* the act would stand affirmed as made with its character as·fixed by the parties to it when made, the ratification would give to the act all the force of an original authority in the agent to have sold at the time, and in the manner, and at the place they did. (*Omnis ratihabitio retrotrahitur et mandato aequiparatur.*)

The authority exercised by the agents in Louisiana to sell absoᵣ lutely in that State was ratified (if ratification was needed) and acted ·upon before Erman & Cahn had acquired any right in the premises. We think the contracts were Louisiana contracts and the rights and obligations of parties controlled by the decision in *47 An. 135, McLane vs. His Creditors."*

The present case was tried by the district judge and not by a jury. He may have taken the above view of the situation or he may have reached the conclusions he did from the testimony adduced on the ground that there were no sales until the prices were paid and the articles were delivered in DeSoto, as McAdams' consent to a sale was held in obeyance until then by a suspensive condition that the possession of the express company was McAdams' possession and the right of property was in him until the payment of the price.

(See on this subject State vs. Lee & O'Neill, 58 Vermont, 140; O'Neil vs. Vermont, 144 U. S. 323; U. S. vs. Schriver, 23 Fed. Repr.; State vs. Wingfield, 115 Mo. 428, 28 S. W. Rep. 363; U. S. vs. Cline, 26 Fed. Rep. 515; Wagner vs. Halleck, 3 Cal. 176; State vs. Intoxicating Liquors, 73 Maine 278; State vs. Peters, 91 Maine 31; Bagley vs. State, 9 S. E. Rep. 721. Meachem, in his work on Sales, Section 740, says: "The delivery to the carrier to pass the title must be unconditional and made with the intention that it shall pass thereby. Of this intention, when the facts are in dispute, the jury is to judge.")

We are not prepared to say as a matter of law that the judge's decision was error. Defendant urges, however, that even if it were true that the sales were made in the Parish of DeSoto, he committed no crime, and in support of that proposition he refers us to State vs. Dennie, 51 Ann. 512; but the facts of the two cases are not analogous.

The defendant in that case kept a bar upon a steamer whose regular business required her to pass backward and forward through different parishes. The boat's home port was New Orleans, and the license to carry on the business at its bar had been obtained both from the State and

State vs. McAdams et al.

the city. A bar upon a steamboat, just as the restaurant upon the same, is part of the incidental business of the boat, and we did not think it was the intention of the General Assembly to have authorized the parish or municipal authorities of each parish or town at which a boat might touch on its trips to exact a license to carry on the bar or the restaurant upon it. (3 La. 15, Fagot vs. Graderigo.) The question in that case was *sui generis*. In dealing with the question we said: "Our view in this matter relates to the business of conducting a bar room on steamers engaged in carrying freight and passengers in good faith and in which refreshments for the passengers and employes are usually deemed proper. It is evident that defendant's business was not carried on by him within the limits of the Parish of St. Tammany and that this parish is without right to collect a license on business having its *situs* in New Orleans, the domicile of the steamer and of necessity of defendant's business." We also referred to the fact that at that time the subordinate political divisions of the State were not entitled to exact a greater license than the State had exacted, but the restriction thus referred to has (so far as alcoholic liquors are concerned) been withdrawn. We think it apparent from the judge's recital of facts that he concluded from the evidence that the defendant was carrying on a retail liquor business in DeSoto Parish through the instrumentality of parties there representing him, the liquors being simply transmitted from Shreveport in execution of the business.

If the offense committed by McAdams be held to have been committed in DeSoto Parish, the District Court of that parish is the proper tribunal before which he should be tried. (45 Ann. 983, 1193.) It was not necessary that he should have been actually and personally present in DeSoto Parish at the time of the commission of the offense. He was constructively present there.

The facts upon which Fleming was convicted are not recited. He is not mentioned in the bills of exception. As matters stand, we must assume he was legally convicted. We presume, however, that he was the agent referred to in the judge's statement, as having acted in concert, *ab initio*, with McAdams in making the sales referred to by him. The case presents no legal grounds for reversal of the judgments, and they are hereby affirmed.

PROVOSTY, J., concurs in the decree.

Rehearing refused.