### UNITED STATES v. ADAMS EXP. CO.

(District Court, S. D. Iowa, E. D. December 22, 1902.)

#### No. 5,024.

1. CRIMINAL LAW—BILL OF PARTICULARS—EVIDENCE.
   On prosecution for crime the court will limit the government in its evidence to those facts set forth in the bill of particulars.

2. INDICTMENT—DEMURRER—BILL OF PARTICULARS.
   Where a demurrer goes both to the indictment and the bill of particulars, and is so treated by counsel on both sides, the court may so consider it to avoid a useless trial of the indictment, though the law does not require it to do so.

3. INTOXICATING LIQUORS—SALE WITHOUT LICENSE—COMMON CARRIER—INTERSTATE SHIPMENT.
   On an indictment charging a common carrier with carrying on the business of a retail liquor dealer without a license by receiving liquors from a liquor company without the state, carrying them to the consignee C. O. D., receiving the money, and carrying it to the liquor company, it was immaterial that no bills or invoices accompanied the shipment.

4. SAME—INTERSTATE COMMERCE.
   The "commerce clause" of the constitution was not involved, the only question being whether defendant sold the liquors.

**5. SAME—TITLE—CONSIGNOR—CARRIER.**
    The title to the liquors passed to the consignee on delivery thereof by the liquor company to the carrier, and therefore the carrier acted as the vendee in carrying and agent of the vendor in collecting, and was not guilty of a sale.

**6. COURTS—PRIOR DECISIONS.**
    The district court may decline to follow the weight of authority in the United States courts, the pertinent question being as to the rulings of the supreme court or the court of appeals for that circuit.

Lewis Miles, U. S. Atty., and George B. Stewart, Asst. U. S. Atty. James C. Davis, for defendant.

McPHERSON, District Judge. This case is by indictment, charging the defendant as a joint-stock association (with the stockholders being unknown), within this district "carrying on the business of a retail liquor dealer without having paid the special tax as required by law." On motion of defendant the government was required to and has filed a bill of particulars. This bill is lengthy, but the substance is as follows: The defendant is a common carrier of goods, parcels, and merchandise, doing business as such in Iowa, Illinois, and other states, and the Dallas Transportation Company is a dealer in spirituous and other liquors at Dallas, Ill., and so known to be by defendant. That at the dates covered by the indictment the Dallas Company delivered at Dallas, Ill., to the defendant, for carriage and delivery at Birmingham, Iowa, jugs containing each less than five wine gallons of such liquors, addressed and consigned to certain and divers parties at said Iowa town, orders therefor for said liquors having been received by and for said Dallas Company from its agent, who took said orders from the consignees. All of said consignments were shipped C. O. D.; that is, the defendant carried said liquors from Dallas, Ill., to Birmingham, Iowa, and was to and did collect from the consignee the carrying charges and the selling price or value of the liquors, and, after collecting the two sums, was to and did deliver the liquors to the consignee. Neither the Dallas Company nor the defendant has paid the special tax as a retail liquor dealer at Birmingham, Iowa. When the price of the liquor was thus collected from the consignee by the defendant, it (the defendant) carried the money to Dallas, Ill., and turned it over to the Dallas Company, thereby completing the transaction. There were no bills nor invoices accompanying said liquors, and none delivered to the consignees. To this indictment, with the bill of particulars, defendant has demurred on the ground that the facts charged do not show the defendant to have carried on the business of a liquor dealer.

Whether a bill of particulars is a matter of record or part of the indictment, and whether, with the indictment, it is subject to demurrer, are all probably to be answered in the negative. Whether such a bill shall be ordered seems to be discretionary with the court. It can be amended; while an indictment, of course, cannot be amended. An indictment often is in such general terms, and yet sufficient in law, as to largely fail to apprise the defendant of what he must meet on the trial. And the office of a bill of particulars is to advise the court, but more particularly the defendant, of what facts, more or less in detail,

119 F.—16

he will be required to meet. And the court will limit the government in its evidence to those facts set forth in the bill of particulars. In this case it was apparent from the general terms of the indictment, and the defendant being a corporation or joint-stock association, and from the crime charged, although the indictment was sufficient in law, that a bill of particulars ought to be filed; and, the demurrer going to both the indictment and the bill of particulars, and being so treated by counsel on both sides, the court will so regard it; because, if the facts so recited do not constitute a crime, there is no good purpose served in impaneling a jury and calling many witnesses from a distance, and then being compelled to direct a verdict for the defendant. Not because the law exacts it, but for the reasons stated, and none other, I will consider the case as if the indictment contained a recital of all the facts set forth in the bill of particulars.

The Dallas Company sells intoxicating liquors,—a fact known by defendant. The Dallas Company, through an agent in Iowa, takes orders from Iowa parties for liquors. The Dallas Company hands the liquors over to defendant in Illinois for two or more purposes, the one being to carry them to the consignee in Iowa. The defendant is to first carry them to a point on its own line in Iowa, where the consignee resides. Then, before turning them over to the consignee, it must collect from him the selling price. . Then the consignee takes the liquors from defendant, and the defendant carries the money back to Illinois, and turns it over to the Dallas Company. Is the defendant thereby, in Iowa, engaged in the business of a liquor dealer? This court having no jurisdiction for crimes committed in Illinois, it is not material what was done in that state, excepting as such acts throw light on and are connected with the transactions within this district; and I fail to note the importance of the allegations that no bills nor invoices accompanied the shipment. And I likewise fail to appreciate any force in the argument of defendant's counsel that the "commerce clause" of the constitution in any way controls this case, and I need only state what the leading cases hold. Leisey v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, held a state statute as void which require the shipment of liquors in the original package to a point within the state from a point without the state, and which liquors must be accompanied with a certificate from the local authorities that the liquors were to be sold only for certain purposes other than for a beverage; and the statute was held to be void because of the "commerce clause." Bowman v. Railroad Co., 125 U. S. 465, 8 Sup. Ct. 689, 31 L. Ed. 700, is in so far like the Leisey Case as that the only question was with reference to a state statute attempting to regulate and place conditions and burdens on commerce between the states. In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, held that liquors brought from without to within the state should be within the provisions of the statute of the state because of a federal statute, and that such federal statute is a constitutional exercise of the power vested in congress. Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088, held that the statute of the state, supplemented by the federal statute, making the state statute operative after the liquors once arrived within the state, could not apply to liquors in transit and before de-

livery to the consignee. These, and none of the other, cases under the "commerce clause," call for any review. Congress, and congress alone, has the power to regulate commerce between the states. When a state undertakes to regulate such commerce, however artful or disguised the form, such attempted regulation by the state is null and void. But while congress has the one power of regulating commerce between states, it also has another power of imposing an internal revenue tax on all agencies doing a business. And an agency, person, or corporation doing an interstate business can no more escape such internal revenue tax than can an agency, person, or corporation doing a business wholly within one state. There is nothing in the proposition. At least it is so plain to me that there is not that I do not care to pursue the question farther.

The only question, in my judgment, is, where and by whom were the liquors sold? If in Illinois, this court is without jurisdiction. If sold by the Dallas Company in Iowa, then the grand jury has made a mistake in naming a defendant in the indictment. Did the Adams Express Company carry on the business of a liquor dealer in Iowa? From the bill of particulars it is apparent that the principal business of the defendant is that of a common carrier, and as such it must receive, carry, and deliver to the consignee all merchandise offered to it by any and all persons within a reasonable time, for a reasonable compensation. It may exact the carrying charges in advance, or it may waive prepayment of such charges, in which event it has and retains a lien on such merchandise for the carrying charges, the payment of which by the consignee removes the lien. And it is within the knowledge of all men that such common carriers do a per cent. of their business by carrying goods, not only collecting its own carrying charges from consignees, but likewise collecting from the consignees the selling prices for the merchandise, and carrying such moneys back to the consignors. That is part of such carriers' business, and, generally speaking, it is lawful, and both stimulates and facilitates trade. And in all such cases, including the case at bar, the carrier has no interest nor profit in the transaction other than as carrier. It receives no percentage, nor share, nor profit from the sale of the liquor. The title to the liquors did not pass from the Dallas Company when the orders were taken by the agent. The company could ignore the orders, and refuse to ratify the act of the agent, for any reason, good or otherwise. Did the title pass from the Dallas Company to the consignees when the liquors, properly addressed, were deposited in the office of the defendant at Dallas, Ill., with directions to defendant to carry them to Iowa, and deliver them to the consignees, after first collecting the selling price? I believe, and so hold, that the title did then and there pass; and also hold that, the title thus passing, that it is decisive of this case against the government. That the authorities are in irreconcilable conflict is beyond question. But that the great weight of authority sustains the above holding is equally true. Indeed, counsel for the government concede this to be so as to the appellate state court decisions; and in making such concession they recognize the force of the many cases. The Iowa supreme court has many times so decided on this and kindred questions. Brown v. Wieland (Iowa) 89

N. W. 17, with cases cited by Judge McClain. In State v. Hanaphy (Iowa) 90 N. W. 601, in an opinion by Judge Weaver, it was held that the agent who took the order in Iowa did not make the sale. It is true that the Iowa court, in the recent case of State v. Express Co. (decided in October, 1902) 92 N. W. 66, seems to hold otherwise. But the opinion in that case is a per curiam opinion, and is grounded only on the prior decision of State v. Express Co., 70 Iowa, 271, 30 N. W. 568. While the opinion in 70 Iowa, 271, 30 N. W. 568, was written by an eminent judge, yet it will be seen that the question is not elaborately discussed, and no attempt is made to support it by authority. And in the more recent case, above cited, the court says:

"A majority of the court, as now constituted, would be inclined to the view that under such a shipment the carrier is the agent of the buyer for the pur- ·pose of transportation, and of the seller for the purpose of retention of pos- session and collection of purchase price, and that, as a necessary corollary, title passed to the buyer on delivery to the carrier."

I quote this to show that the Iowa supreme court only decided the case as it did because of stare decisis, and to present a statement of that court, which seems to me to not only be correct, but one sup- ported by the authorities. For the cases holding as I do, see the fol- lowing: Pilgren v. State, 71 Ala. 368; State v. Flanagan, 38 W. Va. 53, 17 S. E. 792, 22 L. R. A. 430, 45 Am. St. Rep. 832; Com. v. Fleming, 130 Pa. 138, 18 Atl. 622, 5 L. R. A. 470, 17 Am. St. Rep. 763; Higgins v. Murray, 73 N. Y. 252; State v. Peters, 91 Me. 31, 39 Atl. 342; Village of Coffeen v. Huber, 78 Ill. App. 455; Railroad Co. v. Barnes, 104 N. C. 25, 10 S. E. 83, 5 L. R. A. 611; State v. Carl, 43 Ark. 353, 51 Am. Rep. 565; Wheelhous v. Parr, 141 Mass. 593, 6 N. E. 787; Benj. Sales (1888 Ed.) p. 335. Also see the many cases cited in the above.

But counsel for the government contend that the weight of the cases in the United States courts is to the contrary. That might be so, and still I could well decline to follow them. The pertinent question is, has the supreme court or court of appeals for this circuit so held? O'Niell v. Vermont, 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450, is cited. That case is generally cited on matters of commerce, and it seems to be quite generally misunderstood. What was decided in that case, and all that was decided, was that that court was without juris- diction. It was a writ of error to the supreme court of Vermont; and the supreme court was without jurisdiction because, only, that, as appeared from the record, a federal question was not presented to the Vermont trial court. On that question the case is an authority, and on no other question. The same case, as reported in 58 Vt. 140, 2 Atl. 586, 56 Am. Rep. 557, is in line with the contention of counsel for the government. That Austin v. Tennessee, 179 U. S. 387, 21 Sup. Ct. 132, 45 L. Ed. 224, is not in point need only be stated. What that court decided was that certain packages of cigarettes were sub- ject to the police power of the state as expressed by legislation.

I can serve no purpose, either to the parties or to counsel in this case, by reviewing the cases cited in the brief in this case, but I will briefly refer to some of them. One case holds that the consignee can- not maintain replevin for the goods as against the carrier until he

pays the C. O. D. and the collection charges. Other cases hold that, if the sale of goods is on condition, the vendor can retake the property if the condition is not performed. Other cases hold that, if the consignee by fraud gets possession, the vendor can retake them. All of such cases are in harmony with, and some of them so hold, that the consignor does not retain the title, but does retain a lien until the goods are paid for. But such cases are not in point. Stevens v. Ohio (C. C.) 93 Fed. 793, is of no value in this case, for the reason that the consignor in West Viiginia shipped the liquors to the agent of the consignor in Ohio, who then carried them personally to the consignee. The case of U. S. v. Chevalier, 107 Fed. 434, 46 C. C. A. 402, is relied on. There the defendant kept his principal place of business in California. He had a branch house in Oregon, with his name over the door, managed by an agent. The branch house took orders for liquors, and sent the orders to the main office in California, and from there the liquors were sent by a carrier to the purchasers in Oregon. The defendant had paid his government tax in California. Held, that he was not liable for the tax in Oregon. So that case in no wise sustains the contention of the government in the case at bar. The opinion does recite:

"A different case would have been presented if it had been shown that, instead of sending goods to the purchasers by a common carrier, the freight to be paid by the purchasers, the vendor had paid the freight charges, or had sent the goods by express, to be paid for on delivery from the express company; or had consigned them to his agent, to be by him delivered to the purchasers."

And cases are cited. But it also was said in the opinion:

"The current of authority is that, even in a case where the sale is made by the owner of the goods in person at a place other than that in which the goods are situated, the sale is not completed until the property is actually separated from the stock in the store, and delivered to the carrier, and that the place of such delivery is the place of sale."

That the case of U. S. v. Shriver (D. C.) 23 Fed. 134, by the district judge of the Southern district of Illinois, sustains the government, is conceded. But that the weight of authority, both state and federal, is to the effect that the title passes to the consignee when the goods are delivered to the carrier, I have no doubt. And that the fact that the goods are carried C. O. D. does not change the rule I am equally clear. And, this being so, the liquors in question were sold in Dallas, Ill.; and, the sales having been made there, there is no pretense that the liquors in question were again sold by any one.

The express company was the agent of the vendees in carrying the liquors, and the agent of the vendors in collecting and returning the money; and, as the express company did not sell the liquors, it was not engaged in the business of a liquor dealer.